JOYCE A. GRUBBS

V.

JOHN A. RAWLS, M.D., MARION L. RICE, JR., M.D. AND
RICHMOND SURGEONS, LIMITED

Record No. 850668

June 10, 1988

Present: All the Justices

*Jay G. Kauffman* for appellant.

*Lynne Jones Blain; Harry L. Thompson (Robert S. Brewbaker, Jr.; Browder, Russell, Morris & Butcher, P.C.; Thompson, Smithers, Newman & Wade*, on briefs), for appellees.

THOMAS, J., delivered the opinion of the Court.

In this medical malpractice case, the trial court sustained defendants' demurrers and pleas of the statute of limitations. On appeal, plaintiff contends that her medical malpractice notices were reasonable and timely, that her subsequent suit was timely, and

that she should be allowed to proceed with her case. We agree. Therefore, we will reverse the judgment of the trial court.

Joyce A. Grubbs was, prior to June 15, 1982, a patient of Dr. Marion L. Rice, Jr., a gastroenterologist, who treated her for a stomach disorder. On June 15, 1982, upon Dr. Rice's recommendation, Grubbs was admitted to The Retreat Hospital. On June 16, 1982, Dr. John A. Rawls operated on Grubbs. Dr. Rawls provided post-operative care through July 17, 1982. Dr. Rice provided post-operative care through November 1982.

Following surgery, plaintiff's health failed to improve. On or about December 1, 1982, Grubbs concluded that her condition not only had not improved, it had worsened. At that time, she sought the services of another physician. But her condition continued to worsen to the point that on May 10, 1983, she underwent another surgical procedure to correct problems allegedly caused by the original course of treatment by Drs. Rice and Rawls.

On June 20, 1984, Grubbs' attorney sent notice to Dr. Rice of a medical malpractice claim. That notice provided in pertinent part as follows:

> I represent Joyce A. Grubbs in her claim for damages because of your negligent treatment and surgery of the above patient while under your care . . . . [T]his is written notification of the above claims for the following:
>
> On or about the 15th day of June, 1982, the above patient was admitted to The Retreat Hospital under your care. She had been under your care before and you diagnosed severe bile gastritis.
>
> You performed a gastrointestinal endoscopic examination and pursuant to that examination, you consulted Dr. J. A. Rawls, Jr., a surgeon. A decision was made that surgery was the only possible answer. Surgery was performed by Dr. Rawls on June 16, 1982 at The Retreat Hospital.
>
> Said surgical procedure not only did not alleviate the patient's problems, it compounded them. So much so that on the 10th day of May, 1983, the patient underwent surgery to correct a resulting gastric outlet obstruction.
>
> The surgery ordered by you was not only unnecessary and negligently performed, it was done without the informed consent of your patient.

On June 29, 1984, Grubbs' attorney sent a separate notice to Dr. Rawls. That notice read in pertinent part as follows:

I represent Joyce A. Grubbs in her claim for damages because of your negligent treatment and surgery of this patient while under your care . . . . [T]his is written notification of the above claim for the following:

On or about June 15, 1982, the above patient was admitted to The Retreat Hospital under your care. This patient was referred to you for surgical consultation by M. L. Rice, Jr., M.D. Dr. Rice had made a diagnosis that this patient was suffering bile gastritis.

You negligently removed 40% of the patient's stomach when you failed to find her stomach sufficiently inflamed or infected to justify such removal.

You also negligently created a gastric outlet which was too small and which did not function properly.

Said surgical procedure not only did not alleviate the patient's problems, it compounded them. So much so, that on May 10, 1983, the patient underwent surgery to correct the resulting gastric outlet obstruction which you caused.

The surgical procedure performed by you was not only unnecessary and negligently performed, it was done without the informed consent of your patient.

Grubbs filed her initial motion for judgment on October 10, 1984. Several amendments followed. It is the second amended motion for judgment, filed January 11, 1985, which is under review in this appeal.

There is no dispute among the parties that the filing of Grubbs' medical malpractice claims is controlled by the two year statute of limitations for personal injuries set forth in Code § 8.01-243. The real issue here is when that statute of limitations began to run.

The defendant doctors contend that the notice of claim had to be filed within two years of the accrual of the cause of action, and that this was not done with regard to either doctor. They base this argument upon their reading of the two notices. According to the doctors, only two acts of malpractice are complained of: (1) failure to obtain informed consent (which, they argue, necessarily occurred on or before the surgery), and (2) negligent surgery, which occurred on June 16, 1982. Thus, the doctors submit, the June 20

and June 29 notices were late by four days in the first case and thirteen days in the second case.

They argue further that once the notices were late, the case was over, and no amount of pleading or assertion of claims in a subsequently filed motion for judgment could breathe life back into claims which were lost because of failure to file the requisite medical malpractice notices within two years of the accrual of the causes of action for malpractice against them. Defendants' argument is correct as far as it goes, but it does not go far enough because it chooses the wrong date for the accrual of the cause of action against the physicians.

■ Grubbs alleged in her second amended motion for judgment that Rawls provided post-operative care through July 17, 1982, and that Rice provided post-operative care through the month of November 1982. Because the case was disposed of on demurrer, we must accept plaintiff's allegations of fact as true.

■ The controlling principle is that first stated by the Court in *Farley* v. *Goode*, 219 Va. 969, 252 S.E.2d 594 (1979). That case involved failure to diagnose and treat periodontal disease. The issue was whether the right to bring a malpractice action in tort for personal injuries accrued at the inception of continuously negligent examination and treatment or at the end thereof. We held as follows:

> [W]hen *malpractice is claimed to have occurred during a continuous and substantially uninterrupted course of examination and treatment* in which a particular illness or condition should have been diagnosed in the exercise of reasonable care, *the date of injury occurs, the cause of action for that malpractice accrues, and the statute of limitations commences to run when the improper course of examination, and treatment if any, for the particular malady terminates.*

*Id.* at 976, 252 S.E.2d at 599 (emphasis added). Part of our rationale in *Farley* was that as long as the physician-patient relationship continued as to a particular malady or injury, then it could not be said that treatment had ceased. Another part of our rationale in *Farley* was that unless a patient could properly wait to the end of treatment before being required to sue his or her physician, suits might have to be brought while the physician was in the midst of effecting a cure. We noted further that permitting

a patient to wait until the termination of treatment before being required to file suit was conducive to mutual confidence between physician and patient because it gave the physician all reasonable time and opportunity to correct mistakes made at the beginning of a course of treatment.

In *Farley*, we added an essential limitation on the rule of continuing treatment. We said it did not apply simply to a continuation of the physician-patient relationship. Instead, for the rule to apply, there had to exist continuing diagnosis and treatment for the same or related illnesses or injuries after the alleged acts of malpractice. We added further that the *Farley* rule applied only to "a continuous course of improper examination or treatment which is substantially uninterrupted" and not to single, isolated acts of negligence. *Id.* at 980, 252 S.E.2d at 601.

We followed *Farley* in *Fenton* v. *Danaceau*, 220 Va. 1, 255 S.E.2d 349 (1979), a case involving a claim of negligent diagnosis and treatment from October 1971 to July 24, 1972. Plaintiff was operated on in October 1971, for symptoms related to a neck sprain. She claimed the October surgical procedure was a departure from "good" medical practice. She continued to see the defendant doctor for the same or similar problem; he operated on her again in May 1972. She claimed this second operative procedure was also not consistent with "good" medical practice. She continued to see the defendant physician until July 24, 1972. The parties stipulated that there was a single cause of action which arose out of the October 1971 operation, the May 1972 operation, and down to and through July 24, 1972.

The trial court in *Fenton* held that the cause of action accrued and the statute of limitations began to run in October 1971. Thus, according to the trial court, when suit was filed in May 1974, it was out of time. We reversed, writing as follows:

> According to plaintiff's allegations here, defendant began a course of medical treatment in October of 1971 for a particular illness. This treatment continued for the same or a related condition and included an operation in 1971 followed by post-operative care. The treatment included a second operation in 1972 after which further post-operative care was performed into the month of July, 1972.
>
> Thus, we have a *Farley*-type case. Malpractice is claimed to have occurred during a continuous and substantially unin-

terrupted course of examination and treatment in which, according to the allegations, a particular condition was improperly treated and diagnosed. Consequently, the date of injury occurred, the cause of action for that malpractice accrued and the statute of limitations commenced to run when the improper course of examination and treatment for the particular malady terminated on July 24, 1972, a date which was within two years of the filing of this suit.

*Fenton*, 220 Va. at 4, 255 S.E.2d at 350.

In our opinion, the allegations in the instant suit bring it within the scope of the *Farley-Fenton* rule. Here, the claim is that Grubbs was treated jointly by Doctors Rice and Rawls for a stomach ailment starting on June 15, 1982. Her condition worsened while she was under both doctors' care for the same problem. Dr. Rawls' treatment for Grubbs' ailments continued until July 17, 1982, and Dr. Rice's treatment for Grubbs' ailments continued through the end of November 1982. Grubbs had the right under *Farley-Fenton* to wait until the doctors terminated their treatment before she was compelled to sue. Indeed, she had two years from that termination of services in which to sue. *See Boone v. C. Arthur Weaver Co., Inc.*, 235 Va. 157, 365 S.E.2d 764 (1988); *Keller v. Denny*, 232 Va. 512, 352 S.E.2d 327 (1987); *McCormick v. Romans and Gunn*, 214 Va. 144, 198 S.E.2d 651 (1973).

Defendant doctors argue that *Farley* and *Fenton* are inapposite because those cases, although mentioning "continuing treatment," were, in fact, continuing negligence cases. The instant case, they contend, does not contain any allegations of continuing negligence. Defendants misunderstand *Farley* and *Fenton*. The rule of decision in those cases was not that the negligence of the defendant physician extended until the physician-patient relationship ended. Instead, the rule of decision was that if there existed a physician-patient relationship where the patient was treated for the same or related ailments over a continuous and uninterrupted course, then the plaintiff could wait until the end of that treatment to complain of any negligence which occurred *during* that treatment. Thus, within the confines of *Farley*, *Fenton*, and this opinion, Virginia has a true continuing treatment rule.

Defendants next argue that even if the notices were timely filed they did not put either Dr. Rice or Dr. Rawls on notice of claims of post-operative malpractice, and that, as a result, such claims as

were asserted in the January 11, 1985 second amended motion for judgment cannot be maintained. We disagree.

Code § 8.01-581.2(A) concerns the medical malpractice notice; the statute provides in pertinent part as follows:

> No action may be brought for malpractice against a health care provider unless the claimant notifies the health care provider in writing by registered or certified mail prior to commencing the action. The written notification shall include the time of the alleged malpractice and *a reasonable description of the act or acts of malpractice.*

(Emphasis added.) Defendants focus upon the emphasized language in contending that plaintiff's notices were insufficient to advise them of claims of post-operative negligence. According to defendants, they could not reasonably tell from the notice that post-operative negligence was included.

We begin the analysis by noting that the statute, in fact, calls for reasonable notice. We point out, however, that a notice of claims by its nature is not meant to be a particularized statement of claims. A notice calls the recipient's attention to the general time, place, and character of events complained of. In our opinion, plaintiff's notices were barely sufficient to meet the reasonableness requirement of the statute in calling the defendant doctors' attention to the fact that Grubbs had a complaint concerning post-operative treatment.

Both notice letters begin by making reference to "negligent treatment and surgery of the above patient while under your care." Although the surgery was completed on one day, the treatment continued thereafter. Indeed, as we discussed with regard to the statute-of-limitations issue, Dr. Rawls' treatment extended to July 17, 1982, and Dr. Rice's treatment until November 1982. Therefore, the phrase "negligent treatment while under your care" must necessarily include post-operative matters. In addition, and to the same point, both notice letters allege that: "said surgical procedure not only did not alleviate the patient's problems, it compounded them. So much so, that on May 10, 1983, the patient underwent surgery to correct" the resulting gastric outlet obstruction. A complaint of a worsened condition following surgery plainly refers to post-operative events.

Defendants argue that the notices allege only two acts of malpractice: (1) failure to obtain informed consent and (2) negligent surgery on June 16, 1982. In our opinion, the notice letters, when fairly read, are barely sufficient to encompass a third act of malpractice: negligent post-operative treatment. For these reasons, we reject defendants' contention that plaintiff is precluded from maintaining claims of post-operative negligence.

We hold that the notices were sent within the statutory period and that they were broad enough to encompass post-operative negligence. Therefore, we will reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.

*Reversed and remanded.*