# Harry L. Justice

## v.

# Ralph A. Natvig

Record No. 880077

June 9, 1989

Present: All the Justices

*James A. Eichner (Granville R. Patrick; Gary L. Denton; Beale, Wright, Denton, Balfour & Davidson*, on briefs), for appellant.

*Robert S. Brewbaker, Jr. (Browder, Russell, Morris & Butcher, P.C.*, on brief), for appellee.

Justice Whiting delivered the opinion of the Court.

In this medical malpractice action against a surgeon, we decide when the applicable two-year statute of limitations began to run on a claim for an allegedly negligent operation, when that operation was followed by eight years of non-negligent treatment by the same surgeon.

For the purposes of ruling upon the defendant's plea of the statute of limitations, the parties stipulated the following facts. On January 11, 1977, Dr. Ralph A. Natvig, a general surgeon, negligently severed Harry L. Justice's common bile duct, rather than his cystic bile duct,[1] in the surgical removal of Justice's gall bladder. On January 24, 1977, Dr. Natvig negligently inserted a U-tube[2] in treating complications resulting from the severance of the common bile duct. Thereafter, until May 15, 1985, Dr. Natvig treated Justice non-negligently for complications arising out of his operations of January 1977. The trial court sustained Dr. Natvig's plea of the statute of limitations, and we granted this appeal.

On February 24, 1986, Justice gave Dr. Natvig the written notice of his claim for medical malpractice required by Code § 8.01-581.2(A). Neither party requested a medical malpractice review panel and, on June 3, 1986, Justice filed this action against Dr. Natvig.

We have decided a number of cases involving the statute of limitations and a continuing professional relationship. *Farley* v. *Goode*, 219 Va. 969, 976, 252 S.E.2d 594, 599 (1979), was a dental malpractice case in which a dentist negligently failed to diag-

---

[1] The cystic duct, leading to the gall bladder, was to be tied off, allowing bile to continue flowing from the liver through the common bile duct to the small intestine. Instead, the common bile duct was tied off, and thereafter severed, causing bile to back up in the liver.

[2] When Dr. Natvig performed corrective surgery, he inserted a U-tube between the ribs, rather than through tissue in the abdomen. The U-tube was inserted to protect the surgical connection of the duct coming from the liver to the second period of the small intestine (jejunum) until the connection healed. The improper location of the U-tube caused osteochondritis, an infection of the bone cartilage, and other complications, necessitating Dr. Natvig's further treatment, which extended until May 15, 1985.

nose and treat a periodontal disease over a period of four years. In deciding when the statute of limitations began to run, we applied a "continuing treatment" rule in the following language:

We hold under these facts that when malpractice is claimed to have occurred during a continuous and substantially uninterrupted course of examination and treatment in which a particular illness or condition should have been diagnosed in the exercise of reasonable care, the date of injury occurs, the cause of action for that malpractice accrues, and the statute of limitations commences to run when the improper course of examination, and treatment if any, for the particular malady terminates.

■ We applied the continuing treatment rule in the medical malpractice case of *Fenton* v. *Danaceau*, 220 Va. 1, 4, 255 S.E.2d 349, 350 (1979). Then, in *Keller* v. *Denny*, 232 Va. 512, 519, 352 S.E.2d 327, 331 (1987), an attorney malpractice case, and *Boone* v. *C. Arthur Weaver Company*, 235 Va. 157, 163, 365 S.E.2d 764, 767 (1988), an accountant malpractice case, we applied a similar rule in the context of continuing professional services. Finally, in *Grubbs* v. *Rawls*, 235 Va. 607, 369 S.E.2d 683 (1988), a medical malpractice case, we applied the continuing treatment rule even though there was no negligence in the treatment following a negligently performed operation. Rejecting the doctor's argument that *Farley* applies only where the negligence has continued over the whole course of treatment, we held:

The rule of decision in [*Farley* and *Fenton*] was not that the negligence of the defendant physician extended until the physician-patient relationship ended. Instead, the rule of decision was that if there existed a physician-patient relationship where the patient was treated for the same or related ailments over a continuous and uninterrupted course, then the plaintiff could wait until the end of that treatment to complain of any negligence which occurred *during* that treatment. Thus, within the confines of *Farley*, *Fenton*, and this opinion, Virginia has a true continuing treatment rule.

*Grubbs*, 235 Va. at 613, 369 S.E.2d at 687 (emphasis in original).

Dr. Natvig maintains that the continuing treatment rule should not be applied in this case for several reasons. First, he says more

than two years elapsed between some of his treatments, as well as between his final treatment and notice of the malpractice claim. But the record indicates otherwise. Dr. Natvig's office notes, attached to his discovery deposition and made a part of the record by agreement of counsel, indicate that during the period of treatment, he saw Justice in each of the years following the operations. Moreover, Dr. Natvig stipulated that his treatments related to the operations and extended until May 15, 1985. Thereafter, Justice gave the mandatory notice and filed this action within the required time periods.

Dr. Natvig's counsel noted at oral argument that he did not intend his stipulation to be as far-reaching as we have indicated. Our review of the record indicates otherwise. In statements to the trial court, Dr. Natvig's counsel said: "we will stipulate . . . that the care rendered by Dr. Natvig related to what the plaintiff will contend was *sequela* of the 1977 act of negligence." Additionally, counsel responded affirmatively to the following question of the trial court as to the scope of the stipulation, "[b]ut Dr. Natvig treated him up until 1985 and treated him for problems relating to that, to that negligence?"

■ Second, Dr. Natvig says that his treatment was not continuous because Justice saw other physicians during the eight-year period. Of the seven doctors mentioned by Dr. Natvig, only Dr. Owen Gwathmey, a thoracic surgeon, and Dr. William Robertson, another surgeon, treated Justice for complications secondary to Dr. Natvig's surgery. Justice was, however, referred to both surgeons by Dr. Natvig, who continued his treatment of Justice even after their operations. Under these circumstances, neither referral broke the continuity of Dr. Natvig's treatment.

■ Third, Dr. Natvig contends that his non-negligent treatment extended over eight years after the operations, and the longest treatment period to which we have applied the continuing treatment rule is four years, in *Farley*. We decline, however, to limit the application of the continuing treatment rule to a specific number of years.

Finally, we reject Dr. Natvig's argument that the rule should not apply in this case because Justice knew, or should have known, that Dr. Natvig had negligently cut the wrong duct and thereafter had negligently inserted the U-tube in the wrong place. In discovery depositions, Justice indicated that he understood he was jaundiced after the first operation because a duct was blocked

or closed, but was never told that Dr. Natvig cut or closed it. He also testified that Dr. Gwathmey told him Dr. Natvig should not have placed the U-tube through his ribs, and that that was causing some of the complications. In neither instance, however, was Justice advised that either of these acts was negligent. In light of these facts, we hold that the continuing treatment rule does apply.

For the foregoing reasons, we will reverse the judgment of the trial court and remand the case.

*Reversed and remanded.*