JEANETTA HUDSON, ADMINISTRATRIX, ETC.

V.

SURGICAL SPECIALISTS, INC., ET AL.

Record No. 880437

January 12, 1990

Present: Carrico, C.J., Compton, Stephenson, Russell, Whiting, and Lacy, JJ., and
Poff, Senior Justice

Barry J. Nace (W. McMillan Powers; Paulson, Nace, Norwind & Selinger, on brief), for appellant.

Robert W. Hardy; Teresa R. Warner (Fay F. Spencer; John A. Heilig; Knight, Dudley, Pincus, Dezern & Clarke; Heilig, McKenry, Fraim & Lollar, on briefs), for appellees.

JUSTICE RUSSELL delivered the opinion of the Court.

The sole question on appeal in this medical malpractice case is whether the trial court erred in restricting the plaintiff's evidence to the specific facts set forth in the plaintiff's notice-of-claim letter.

In 1983, Jeanetta Hudson, administratrix of the estate of Jack B. Hudson, Sr. (plaintiff), sent a letter, purporting to be a notice of claim under Code § 8.01-581.2A, to Surgical Specialists, Inc., Dr. Crile Crisler, Dr. Robert D. Brickman, Dr. Edwin Robey, Eastern Virginia Graduate School of Medicine, and Medical Center Hospitals. Four months later, the plaintiff filed a motion for judgment against those parties, seeking to recover damages for

the wrongful death of her late husband, Jack B. Hudson, Sr. (the patient), who died on September 19, 1981, allegedly as a result of the negligence of the defendants during cardiopulmonary bypass surgery performed at Norfolk General Hospital four days earlier. None of the parties requested a review by a medical malpractice panel. On February 6, 1986, the plaintiff took a voluntary nonsuit.

The plaintiff sent a second notice of claim, essentially identical to the first, to the same defendants. On August 4, 1986, the plaintiff filed a second wrongful death action against them, and, again, no medical malpractice panel was requested. Extensive discovery proceedings ensued. By agreement of the parties, Drs. Brickman and Robey and the Eastern Virginia Graduate School of Medicine were dismissed as defendants. The case proceeded to a jury trial on August 17, 1987, against Dr. Crisler, Surgical Specialists, Inc., and Medical Center Hospitals.

At the close of the plaintiff's evidence, Medical Center Hospitals moved to strike on the ground that no expert testimony had been offered to show that it had violated the appropriate standard of care. The court granted the motion, and the hospital was dismissed. At the close of all the evidence, the jury returned a verdict in favor of Surgical Specialists, Inc. and Dr. Crisler, the sole remaining defendants. The court entered judgment on the verdict and we granted the plaintiff an appeal, limited to the question whether the court erred in restricting the plaintiff's evidence to the specific facts set forth in her notice of claim.

The plaintiff's notice of claim reads as follows:

This is to advise you that I represent Jeanetta Hudson, widow of Jack B. Hudson, Sr. Pursuant to § 8.01-581.2 of the Code of Virginia of 1950 as amended, you are hereby provided written notice of alleged medical malpractice. You are alleged to have negligently performed double aortocoronary bypass with saphenous vein graft sequential graft to the diagonal and left anterior descending coronary arteries with a cardiopulmonary bypass on or about September 15, 1981 on the above named patient resulting in the death of Jack B. Hudson, Sr. You are alleged to have failed to follow standard and generally accepted procedures for bypass surgery in that you did not properly cool and fibrilate [sic] the heart prior to the insertion of the left ventricular vent into the right superior pulmonary vein. This alleged act of negligence re-

sulted in air entering the patient's heart and being ejected into the arterial system ultimately resulting in the death of Jack B. Hudson, Sr.

Later, the plaintiff's theory of the case proved to be more complex than the notice indicated. The only expert witness who testified for the plaintiff was Diane Janet Sansonetti, M.D.* She testified that the patient's death resulted from the inadvertent admission of air to the left side of the heart during the insertion of a vent in the right superior pulmonary vein, as a part of the cardiopulmonary bypass procedure. Efforts to remove the resulting air bubbles from the bloodstream were unsuccessful. The bubbles traveled to the brain, causing the patient's death.

Dr. Sansonetti's opinion was that the appropriate standard of care would have required reduction of the risk of air entering the heart during venting by either of two methods: first, ensuring that the heart was full of blood while inserting the vent, thus avoiding the risk of a vacuum which would draw air into the heart, or second, causing the heart to stop beating during the venting procedure. The heart could be stopped by cooling it with a cold saline solution, causing the heart to fibrillate. Fibrillation is a shallow vibration of the heart, which greatly lessens its normal pumping action. If air were admitted while the heart was fibrillating, the air would less likely be pumped to the brain, and could be more easily removed from the bloodstream.

The plaintiff's theory was two-fold. First, she contended that the defendant surgeon need not have inserted a vent at all, but if he did employ that technique, the appropriate standard of care required that he first ensure that the heart-lung machine was not withdrawing blood faster than the still-beating heart could replenish it. Dr. Sansonetti testified that the rapid withdrawal of blood was in fact the cause of the admission of air. Because the heart-lung machine had withdrawn blood rapidly, the heart was less full than expected. Thus, when the surgeon made an incision in the pulmonary vein, a vacuum was present which drew air into the bloodstream. The plaintiff also contended that the surgeon was negligent in failing to place a cross-clamp on the aorta before making the incision. Such a clamp would have minimized the risk

---

* Another prospective expert witness failed to demonstrate familiarity with the standard of care in Virginia. The court excluded his testimony and that ruling is not before us on appeal.

of admitting air and would have trapped in the aorta any air that might have entered, where it could have been removed before it reached the brain. Thus, the notice of claim alleged acts of negligence which constituted only a peripheral part of the theory the plaintiff espoused at trial.

■ Before the trial began, the defendants had received, in addition to the pleadings, answers to interrogatories, a 13-page summary of the opinions of plaintiff's proposed expert witnesses, a *de bene esse* deposition of one of the experts, and discovery depositions of two of the experts. It is undisputed that the defendants knew, before trial, the details of the testimony of the plaintiff's witnesses.

Nevertheless, on the opening day of the trial, the defendants moved the court to limit the plaintiff's evidence to the specific acts of negligence set forth in the notice of claim — the failure to "cool and fibrillate the heart" prior to inserting the vent. The court granted the motion, and thereafter restricted the evidence and arguments to that claim. As a result, the plaintiff was limited in presenting evidence in support of her theory of the case, as described above. Consistent with its ruling, the court instructed the jury:

> In your deliberations you may only consider that evidence of record directly related to the plaintiff's claim that Dr. Crisler failed to properly cool and fibrillate Mr. Hudson's heart prior to insertion of the vent into the right superior pulmonary vein.

Code § 8.01-581.2A. provides, in pertinent part:

> No action may be brought for malpractice against a health care provider unless the claimant notifies the health care provider in writing by registered or certified mail prior to commencing the action. The written notification shall include the time of the alleged malpractice and *a reasonable description of the act or acts of malpractice.*

(Emphasis added.) The trial court took the view that the italicized language requires that a plaintiff's notice of claim must encompass the theory upon which the plaintiff will rely at trial.

The defendants argue on appeal, as they did below, that the notice of claim is the sole foundation upon which a health care

provider can rely in making his decision whether to request a medical malpractice review panel under the provisions of the Medical Malpractice Act. Further, the defendants point out, after this action was filed, the General Assembly enacted Code § 8.01-581.2:1, authorizing a plaintiff, under certain conditions, to amend a notice of claim "to add additional parties or causes of action in furtherance of the ends of justice." *Id.* (Cum. Supp. 1989). That section, enacted in 1986, Acts 1986, c. 227, became effective July 1, 1987, six weeks before trial began. Thus, the defendants contend, the plaintiff had an opportunity to seek leave to amend the notice before trial and, having failed to do so, must be bound by the terms of the original notice.

The plaintiff contends that the defendants had an opportunity to object to the "adequacy or reasonableness" of the notice within 10 days (later extended to 30 days) of receipt of the notice, pursuant to Rule 2(b) of the Medical Malpractice Rules of Practice. Because the defendants failed to make such an objection, the plaintiff argues that the defendants have waived any right to assert that the notice was insufficient. Further, says the plaintiff, she effectively amended her notice of claim by her subsequent pleadings and by the voluminous discovery which was completed before trial. After receiving this discovery, she points out, the defendants never moved for a bill of particulars.

■ The arguments on both sides misconceive the essential nature of the notice required by Code § 8.01-581.2A. The notice is neither a bill of particulars nor a pleading of any other kind. It is not required to contain a summary of the plaintiff's evidence or an exposition of the plaintiff's theories of the case. Its purpose is simply to call the defendant's attention to the identity of the patient, the time of the alleged malpractice, and a description of the alleged acts of malpractice sufficient to enable the defendant to identify the case to which the plaintiff is referring. *See Cowan* v. *Psychiatric Associates, Inc.,* 239 Va. 59, 62, 387 S.E.2d 747, 749 (this day decided).

■ At the time a plaintiff gives a notice of claim, the plaintiff's knowledge of the medical ramifications of the case may be fragmentary. The defendant is not warranted in basing his decision whether to request a review panel solely upon the contents of the plaintiff's notice. If the notice is sufficient to identify the case in his files, and in the appropriate medical records, he is expected to depend upon those more detailed, contemporaneous, and presum-

ably reliable sources in deciding whether to request a panel. If the notice is insufficient to identify the case among those sources, he has the right to object to it under Rule 2(b), and to demand a notice that will fairly identify the case. After the plaintiff has filed suit, Part Four of the Rules of Court, as well as the provisions pertaining to bills of particulars, furnish the defendant abundant opportunities to ascertain the details of the plaintiff's case in time to prepare his defense.

In *Grubbs* v. *Rawls*, 235 Va. 607, 614, 369 S.E.2d 683, 687 (1988), decided after the final judgment below, we noted that Code § 8.01-581.2A requires only "reasonable notice." We added that the statute did not intend that the notice contain "a particularized statement of claims." *Id.*; *accord Cowan, supra.* We adhere to that view, and accordingly conclude that the trial court erred in restricting the plaintiff's evidence to the specific facts alleged in the notice of claim.

Our examination of the record discloses that, even if the plaintiff's evidence had not been limited by the court's ruling, it would have been insufficient to make out a *prima facie* case of negligence against the defendant hospital. No evidence was proffered tending to show that the hospital, or any of its agents, departed from the appropriate standard of care. Accordingly, the court correctly sustained the motion to strike made on behalf of the hospital, and the judgment in favor of Medical Center Hospitals will be affirmed.

For the reasons stated above, we will reverse the judgment in favor of Dr. Crisler and Surgical Specialists, Inc., and remand the case with respect to the plaintiff's claims against those defendants for further proceedings consistent with this opinion.

*Affirmed in part, reversed in part, and remanded.*