## CIRCUIT COURT OF THE CITY OF WINCHESTER

Susie Pidgeon

v.

Gary W. Wake et al.

August 31, 1994

Case No. (Law) 93-191

BY JUDGE JOHN E. WETSEL, JR.

On August 31, 1994, this case came before the Court on the Winchester Medical Center's Plea of the Statute of Limitations and Motion for Summary Judgment. The parties appeared by their counsel Laurie A. Amell, Esquire, for the Plaintiff, and Carolyn J. Airing, Esquire, for the Defendant Winchester Medical Center. Upon consideration of the oral argument of the parties and their memoranda of authorities, the Court has made the following decision to grant the Medical Center's Motion for Summary Judgment based on the Plea of the Statute of Limitations, because the continuing care exception to the statute of limitations does not apply to hospitals.

### I. Statement of Material Facts

The following facts are established in this case by the parties' admissions.

This is a medical malpractice action arising out of the alleged failure of the Defendants to evaluate, diagnose and treat Plaintiff's subacute bacterial endocarditis.

The Winchester Medical Center is a full service hospital located in Winchester, Virginia, and on December 11-12, 1990, the Plaintiff received treatment at the Medical Center for symptoms related to her subacute bacterial endocarditis. The Plaintiff's right of action against the hospital is

based on this treatment, which was rendered by Dr. Holden, an emergency room physician, who treated her only on this one occasion for symptoms related to her endocarditis.

Dr. Holden was an emergency room physician, whom the hospital employed as an independent contractor. The Court has previously sustained Dr. Holden's plea of the statute of limitations.

When the Plaintiff was discharged on December 12, 1990, she received two pages of written instructions which advised her to call the Medical Center's emergency department if her condition worsened and referred her to a local orthopedic surgeon. She did not call the emergency department, and no follow up appointment at the Medical Center was scheduled.

In February 1991, the Plaintiff was diagnosed with subacute bacterial endocarditis by Dr. Kujala, a physician outside the Medical Center. Plaintiff was treated at the Medical Center for this condition on the following dates: February 26 through March 11, 1991, and March 22 through March 26, 1991. On March 22, 1991, at the Medical Center, the Plaintiff suffered a stroke and received out-patient medical care and rehabilitative treatment at the Medical Center from June 1991 through May 1992. All of this treatment was at the direction of her treating physicians, who are not employed by the Medical Center. The Plaintiff claims that the stroke was caused by the failure to properly treat her endocarditis.

On June 29, 1992, Plaintiff on her own went to the Winchester Medical Center emergency room for conditions associated with residuals of her stroke.

On April 9, 1993, the Plaintiff, on her own was seen by the Medical Center's Director of Rehabilative Services, for conditions she claims are related to her stroke.

The Plaintiff claims that her treatment at the Medical Center from February 26, 1991, through April 9, 1993, was continuing care for the same condition, so that her cause of action against the Medical Center accrued on April 9, 1993, because of the continuing care doctrine.

On November 25, 1992, the claimant served a notice of claim under the Virginia Medical Malpractice Act, and on February 12, 1993, the Chief Justice of the Supreme Court notified the parties of his determination to designate a panel. The medical malpractice panel was rescinded on July 8, 1993.

Plaintiff filed her Motion for Judgment on August 30, 1993.

On July 1, 1993, amendments to the Medical Malpractice Act, including modifications of Virginia Code § 8.01-581.2 and the repeal of Virginia

Code § 8.01-581.9 went into effect, and this Court has ruled that the tolling provisions under Virginia Code § 8.01-581.9, being procedural in nature, were repealed effective July 1, 1993, and apply to the Plaintiff's pending action.

## II. *Conclusions of Law*

### 1. *Summary Judgment*

Summary Judgment is appropriate if there is no material fact genuinely in dispute. Supreme Court Rule 3:18; *Carson v. LeBlanc*, 245 Va. 135, 139, 427 S.E.2d 189 (1993). In *Metro Machine Corp. v. Mizenko*, 244 Va. 78, 83, 419 S.E.2d 632 (1992) (citing *Gaudet v. Exxon Corp.*, 562 F.2d 351, 355 (5th Cir. 1977), *cert. denied*, 436 U.S. 913 (1978), the Supreme Court analyzed the character of the genuine issue of fact criterion governing the Court's disposition of a motion for summary judgment and stated:

> [T]he issue of fact must be "genuine." When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

As the Supreme Court observed in *Virginia and Maryland R.R. Co. v. White*, 228 Va. 140, 145, 319 S.E.2d 755 (1984) (quoting *Bly v. Southern Ry. Co.*, 183 Va. 162, 175, 31 S.E.2d 564 (1944)):

> It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. *The very essence of its function is to select from among conflicting inferences* and conclusions that which it considers most reasonable . . . . That conclusion, whether it relates to negligence, causation or any other factual matter, cannot be ignored. Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable (emphasis added).

While the Supreme Court of Virginia frowns on the short-circuiting of litigation where there are genuine issues of fact in dispute or conflicting inferences which may be drawn from uncontested facts, *see Renner v. Stafford*, 245 Va. 351, 429 S.E.2d 351 (1993), and *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 431 S.E.2d 277 (1993) (ruling on demurrer), there is no genuine issue of fact in dispute or conflicting inferences upon which reasonable men could differ in this case.

## 2. Statute of Limitations

Pursuant to Virginia Code § 8.01-243(a) "Every action for personal injuries, whatever the theory of recovery . . . shall be brought within two years after the cause of action accrues." In the context of the physician-patient relationship, there is an additional principle governing the determination of the accrual of the Plaintiff's cause of action for purposes of the application of the statute of limitations which is pertinent to this case. If there existed a physician-patient relationship where the patient was treated for the same or related ailments for a continuous and uninterrupted course of treatment, then the Plaintiff may wait until the end of that treatment by his physician before being required to file an action for medical malpractice which occurred during that treatment. *Grubbs v. Rawls*, 235 Va. 607, 613, 369 S.E.2d 683 (1988). *Accord, Justice v. Natvig*, 238 Va. 178, 180, 381 S.E.2d 8 (1989) (For statute of limitations purposes, treatment by subsequent health care providers to whom the patient was referred for treatment by the first physician do not interrupt the treatment for statute of limitations purposes, so long as the first physician, who committed the malpractice, continues to treat the patient for the same condition.)

For the continuing treatment rule to apply, the following elements are required: (1) There must be a continuous course of treatment with the defendant health care provider and (2) The treatment must be for the same or related ailments.

In *Keller v. Denny*, 232 Va. 512, 517-518, 252 S.E.2d 327 (1987), the Supreme Court discussed the continuous nature of the undertaking by the professional in the context of an attorney client relationship and stated:

> The reasons which supported the application of the continuing treatment rule to the relationship of physician and patient apply with equal force to the relationship of attorney and client. Accordingly, we hold that when malpractice is claimed to have occurred during the representation of a client by an attorney with respect to a particular undertaking or transaction, *the breach of*

*contract or duty occurs and the statute of limitations begins to run when the attorney's services rendered in connection with that particular undertaking or transaction have terminated,* notwithstanding the continuation of a general attorney-client relationship, and irrespective of the attorney's work on other undertakings or transactions for the same client (emphasis added).

This case turns on the first prong of the test, whether there was a continuous course of treatment with the health care provider.

### 3. *Enterprise Liability of the Hospital*

The Winchester Medical Center is clearly a "health care provider" within the meaning of the Virginia Medical Malpractice Act. Virginia Code § 8.01-581.1. However, the Supreme Court has not ruled on the question of whether treatment by a hospital is subject to the continuing treatment exception to the application of the Statute of Limitations, but in this era of health maintenance organizations and the enterprise practice of medicine, it is not surprising that this is now an issue. *See generally,* Annotation, *Liability of Hospital or Sanitarium for Negligence of Physician or Surgeon,* 51 A.L.R. 4th 235 (1987). In *Abercrombie v. Fauquier Hospital, Inc.* (Circuit Court of Fauquier County, Law No. 93-60, 1993), the Court held that the relationship between the plaintiff patient and the hospital terminated upon plaintiff's discharge from the hospital notwithstanding his subsequent out-patient admissions, and the continuing care exception did not extend the accrual of the plaintiff's cause of action. Similarly, in *Coakley v. Orr,* 6 Va. Cir. 170 (Loudoun County 1984), the Court held that the relationship between a pharmacist and a customer did not justify application of the continuing treatment rule since the "pharmacist does not know whether he will ever see a particular customer again." *Id.* at 172. This is also true of the hospital, whereas the physician, once having undertaken a course of treatment, may not abandon that treatment of that patient until it is completed or reasonable provisions for its completion have been made. The Plaintiff relies on *Johnson v. Capital Area Permanente Group,* 30 Va. Cir. 107 (Fairfax County 1993), in which the court held that the continuing treatment rule was applicable to a medical testing service that performed tests misdiagnosing the Plaintiff as HIV-positive, but this court respectfully disagrees with the conclusion reached in that case.

A corporation, like the Medical Center, may have many heads and even more hands, and any one or more of the heads and hands may bind the corporation, and Dr. Holden's acts during the treatment in December 1990 could be a predicate for potential liability of the hospital. Traditional principles of agency govern the potential liability of a health care provider for the actions of a third party. *See Naccash v. Burger*, 223 Va. 406, 418-419, 290 S.E.2d 834 (1982) (action of nurse). In this case Dr. Holden was employed to provide emergency room services to patients, not continuing care. A hospital is a physical treatment facility, although it is staffed by nurses, administrators, and occasionally physicians employed by the hospital, and furnished with a wide range of medical equipment to address the broad universe of medical problems, unlike a physician, a hospital does not diagnose a patient's condition or determine a patient's course of treatment until his malady is completely resolved. Where the patient is not completely recovered on discharge, the patient's continuing care obligations are assumed by the patient's treating physician for whom the hospital is generally not responsible. While the hospital may be held liable for acts of physicians employed by it, *cf. Lawhorne v. Harlan*, 214 Va. 405, 200 S.E.2d 569 (1973) (hospital may be liable for acts of intern employed by it), this does not mean that the hospital is also providing continuing care to the patient after the patient leaves the hospital. " 'Continuous treatment' . . . mean[s] diagnosis and treatment 'for the same or related illnesses or injuries, continuing after the alleged act of malpractice'." *Farley v. Goode*, 219 Va. 969, 979, 252 S.E.2d 594 (1974).

In *Stuart Circle v. Curry*, 173 Va. 136, 149, 3 S.E.2d 153 (1939), the Supreme Court held:

> [A] hospital is not responsible for the acts of an attending physician, whether a member of its staff or an outsider, except where by contract it has assumed responsibility. This is based on the ground that such physician is an independent contractor and alone is responsible for the exercise of professional skill and judgment, subject to no control by the hospital in the execution thereof.

When the patient enters a hospital, he is admitted by a physician for a prescribed, discrete course of treatment, and when that course of treatment is concluded, the patient is discharged, and the hospital's services are applied to other patients. In *James v. Jane*, 221 Va. 43, 50, 267 S.E.2d 108 (1980), the Supreme Court declined to extend sovereign immunity to the

physicians of a state hospital ruling that "when the physician agrees to treat or operate on a certain patient, although his employment by the hospital makes possible the arrangement, the relationship becomes a personal and confidential one of a doctor and patient, not the Commonwealth of Virginia (the hospital) and the patient." *Id.* at 50. In the case at bar, the physician-patient relationship was formed between Dr. Holden, the emergency room physician and the other physicians who treated the patient and not with the Medical Center, while this relation could be a predicate for a finding of vicarious liability of the hospital based on the December 1990 treatment, the relationship between Holden and the plaintiff ended when the plaintiff was discharged. It is the personal, continuing, professional relationship between the patient and the physician or the attorney and the client, which is the basis for the public policy decision of the Supreme Court to allow that personal relationship to continue until the course of professional service is completed. *Grubbs v. Rawls*, 235 Va. 607, 611-612, 369 S.E.2d 686 (1988).

Courts in other jurisdictions have determined that the cause of action for alleged malpractice against a hospital accrues when the patient is treated at the hospital, and that, when discharged, the continuing treatment exception to the statute of limitations does not apply to subsequent admissions at the hospital, even where the Plaintiff's attending physician may be the same. *Meier v. Huntington Hosp.*, 588 N.Y.S.2d 421 (A.D. 2 Dept. 1992) (plaintiff's subsequent admissions as directed by her attending physician was a renewal rather than a continuation of the hospital-patient relationship); *Rodrigo v. Brookdale Hosp.*, 599 N.Y.S.2d 626 (N.Y. A.D. 2 Dept. 1993) (hospital had no control over the course of the patient's treatment during the time she was in the hospital under her attending physician's care, because the hospital did not control the patient's course of treatment, it was not an unbroken course of continuous treatment rendered by the hospital); and *Smythe v. Consenqco*, 380 N.W.2d 478 (Mich. App. 1985) (where the physician performed an operation on the plaintiff at the hospital, the plaintiff was discharged but then treated by the same surgeon for two additional months, the surgeon's continued treatment of the plaintiff did not constitute a continuing course of treatment by the hospital, and the plaintiff's cause of action against the hospital accrued upon her discharge). In this case discrete services were rendered and completed to the plaintiff at the Medical Center in December 1990.

The Winchester Medical Center is not a health maintenance organization providing health care services to the plaintiff. *See generally*, Virginia

Code § 38.2-4300. If the hospital were a health maintenance organization providing complete health care to the plaintiff, the decision in this case might be different, but since it is not, that is an issue for another day. In this case, the Plaintiff's right of action against the Medical Center is barred by the two year statute of limitations, because the Plaintiff's right of action against the hospital accrued on December 12, 1990, and her motion for judgment was filed more than two years after that time.

### III. *Decision*

For the foregoing reasons, it is adjudged and ordered that the Defendant Winchester Medical Center, Inc.'s Motion for Summary Judgment is granted because the Statute of Limitations has run on the Plaintiff's right of action against the Medical Center.