## CIRCUIT COURT OF FAIRFAX COUNTY

Susan E. Crossan

    v.

Fairfax Ob-Gyn Associates, P.C., et al.

March 3, 1998

Case No. L151206

BY JUDGE STANLEY P. KLEIN

This matter is before the Court on a Plea in Bar filed by defendants Fairfax Ob-Gyn Associates, P.C. ("Fairfax") and Robert L. Castle (collectively "defendants") to plaintiff's Second Amended Motion for Judgment. Defendants argue that plaintiff Susan E. Crossan's cause of action for medical malpractice is barred by the applicable statute of limitations. For the reasons set forth herein, the Plea in Bar is overruled.

### I. *Background*

According to the Second Amended Motion for Judgment ("SAMJ"), Crossan retained the medical services of defendants on or about February 18, 1992, for purposes of care and treatment in connection with Crossan's desire to give birth to a healthy child. Crossan allegedly suffered three miscarriages before seeking treatment from the defendants. At the time defendants began to provide treatment for Crossan, she was already several months pregnant. Crossan alleges that defendant Castle negligently failed to hospitalize her shortly before the child's expected day of delivery while Crossan was suffering from pre-eclampsia, a form of high blood pressure. The pregnancy failed on April 1, 1992. Crossan asserts that Castle continued to treat her thereafter. Crossan became pregnant again in October of 1992 but suffered a

miscarriage on or about January 5, 1993. At that time defendants' services were terminated by Crossan.

In January, 1995, Crossan filed a Motion for Judgment in the Circuit Court of the City of Winchester against defendants for negligence. Specifically, Crossan alleged that Castle's failure to hospitalize her for pre-eclampsia caused her to suffer a stillborn child on April 1, 1992. Shortly thereafter, the case was transferred to this Court. On October 28, 1996, this Court granted Crossan leave to file an Amended Motion for Judgment. Defendants filed a Plea in Bar based on the applicable two-year statute of limitations for negligence cases. Citing the "continuing treatment rule," the Court overruled defendants' Plea in Bar on March 28, 1997. On January 2, 1998, Crossan was granted further leave to amend her Motion for Judgment. Crossan then filed a Second Amended Motion for Judgment, and defendants again responded with a Plea in Bar based on the two-year statute of limitations. At the hearing on the second plea in Bar, defendants offered no admissible evidence to support their idea.

## II. *Analysis*

A Plea in Bar is a defensive tool which "shortens the litigation by reducing it to a distinct issue of fact which, if proven, creates a bar to the plaintiff's right of recovery." *Tomlin v. McKenzie*, 251 Va. 478, 480 (1996). The trial court must rely solely upon the pleadings to make a determination on the Plea in Bar if no evidence is provided in support of the plea. *Id.* (citing *Weichert Co. of Va. v. First Commercial Bank*, 247 Va. 108, 109 (1993)). The facts articulated in the plaintiff's motion for judgment must be taken as true *Id.*

In actions for medical malpractice against a health care provider, the applicable statute of limitations is two years. Va. Code § 8.01-243. The cause of action generally accrues on the date that the injury is sustained. Va. Code § 8.01-230. However, where a patient suffers an injury during the course of treatment for the same or related ailments or conditions, the cause of action accrues and the statute of limitations commences to run upon the termination of such treatment. *Grubbs v. Rawls*, 235 Va. 607, 613 (1988).

Defendants argue that Crossan's cause of action for negligence accrued on April 1, 1992, when Crossan sustained an "injury" by suffering a stillborn child. Accordingly, defendants assert that the statute of limitations expired on or about April 1, 1994, nine months before Crossan filed her Motion for Judgment. Defendants further assert that the continuing treatment rule cannot save the alleged cause of action under the facts of this case. In support of that

contention, defendants argue that Crossan's claim that she solicited the services of defendants in an effort to facilitate the birth of a healthy infant, either immediately or in any future pregnancy, placed defendants in the position of being "guarantors" indefinitely of a successful birth. Such a proposition, defendants contend, stretches the continuing treatment rule to an unconscionable level. In addition, defendants argue that Crossan's failure to have a "healthy" child in April, 1992, constituted a cessation of their services with respect to that pregnancy, such that the treatment provided to Crossan thereafter was wholly severable. Noting that the SAMJ accuses the defendants of being negligent only during the course of Crossan's pregnancy which ended unsuccessfully in April, 1992, defendants argue that Crossan's cause of action necessarily accrued at the time of any injury resulting from such negligence. Defendants therefore assert that treatment provided to Crossan after that date was unrelated to her original condition.

Crossan argues that the defendants were retained to assist her in having a healthy child in any pregnancy, including the one which ended in April, 1992. Crossan contends that after she suffered a stillborn child in April, 1992, defendants continued their efforts to achieve her goal of giving birth to a healthy infant. Consequently, Crossan asserts that, under the continuing treatment rule, the statute of limitations began to run in January, 1993, when defendants' services were terminated. Based on the allegations set out in the SAMJ, the Court agrees with Crossan.

While defendants concede that the continuing treatment rule is well-rooted in Virginia jurisprudence, they incorrectly attempt to limit its scope. Defendants rely on the specific holding in *Farley v. Goode*, 219 Va. 969 (1979), wherein the continuing treatment rule was first recognized in the Commonwealth. In *Farley*, the treating dentist had negligently failed to diagnose periodontal disease during a continuous course of treatment from 1972 through 1976. The trial court found that the breach of the applicable standard of care had occurred more than two years before the cessation of services and sustained the defendant's plea in bar. The Supreme Court reversed, holding that:

> [W]hen malpractice is claimed to have occurred during a continuous and substantially uninterrupted course of examination and treatment in which a particular illness or condition should have been diagnosed in the exercise of reasonable care, the date of injury occurs, the cause of action for that malpractice accrues, and the statute of limitations commences to run when the improper course of examination, and treatment if any, for the particular malady terminates.

*Id*. at 976. The Court limited its holding to circumstances where a "continuous course of *improper* examination or treatment which is substantially uninterrupted is proved as a matter of fact." *Id*. at 980 (emphasis supplied). *See also, Fenton v. Danaceau,* 220 Va. 1 (1979).

The scope of the continuing treatment rule has evolved and expanded, however, since it was first recognized by the Virginia Supreme Court. Drawing upon the rationale underlying its decisions regarding similar issues in other professional contexts,[1] the Supreme Court in *Grubbs v. Rawls* held that the rule in fact encompassed cases where the defendant's negligence did not *extend* to the end of the treatment period, but rather occurred at any time *during* the relevant treatment. *Grubbs, supra,* at 613. *See also, Justice v. Natvig,* 238 Va. 178 (1989) (statute of limitations did not commence to run until eight years after doctor committed negligence during operation, where surgery was followed by an uninterrupted course of non-negligent treatment relating to the same condition).

The Court in *Grubbs* also set out the basis for the Court's recognition of the continuing treatment rule:

Part of our rationale [is] that as long as the physician-patient relationship continue[s] as to a particular malady or injury, then it [can] not be said that the treatment [has] ceased. Another part of our rationale [is] that unless a patient could properly wait to the end of treatment before being required to sue his or her physician, suits might have to be brought while the physician was in the midst of effecting a cure ... . [P]ermitting a patient to wait until the termination of treatment before being required to file suit [is] conducive to mutual confidence between physician and patient because it [gives] the physician all reasonable time and opportunity to correct mistakes made at the beginning of a course of treatment.

*Grubbs, supra* at 611-12. A "course of treatment" exists where the physician continues to diagnose and treat the patient for the *same or related illnesses*

---

[1] *See, Keller v. Denny,* 232 Va. 512 (1987) (in action for malpractice against attorney, statute of limitations did not begin to run until the termination of attorney's services with respect to the underlying transaction); *Boone v. C. Arthur Weaver Co.,* 235 Va. 157, 163 (1988) (where defendant accountants gave "continuing or recurring attention" to a particular matter over time, and their ongoing services were "related to the original matter" for which defendants had been hired, the statute of limitations did not commence to run until such services ended.)

after the alleged acts of malpractice have occurred. *Id*. at 613. Accordingly, so long as defendants continued to treat Crossan for the same condition over a continuous and substantially uninterrupted period of time, her cause of action for malpractice did not accrue until the end of such treatment.

The SAMJ provides that Crossan solicited defendants' services:

[B]ecause she was concerned about the competency of the medical care she was receiving … as it related to her long-standing objective … of having a live, healthy child. Dr. Castle … was aware of Crossan's concern about the care and treatment she was receiving … and was also aware of her objective of having a live, healthy child. Dr. Castle accepted the medical care for [Crossan] on this basis. After the stillborn delivery of the dead child on April 1, 1992, and, in particular, on April 7, 1992, because her objective and purpose is transferring her care to [defendants] had not been satisfied, [Crossan], on such date, indicated to Dr. Castle that she would go forward with another pregnancy. In connection with such matter, [defendants] continued through January 5, 1993, their continuous care and treatment of [Crossan] for the purpose of the delivery of a live, healthy child … .

SAMJ ¶ 2A. Drawing all reasonable inferences in favor of Crossan, the treatment alleged in the SAMJ was not for *any specific pregnancy* but for Crossan's overall objective of having a "live, healthy child." Defendants' services continued uninterrupted over the course of two pregnancies, and the unsuccessful outcome of the first pregnancy did not constitute a cessation of defendants' services in obtaining Crossan's ultimate goal. As such, the rationale underlying the decision in *Grubbs* is equally applicable.

Furthermore, assuming, as this Court must at this stage in the proceedings, that defendants negligently treated Crossan's pre-eclampsia before the failed April, 1992, pregnancy, their continuing care of Crossan until January, 1993, afforded them the opportunity to potentially rectify the effects of any mistakes made during that pregnancy. Moreover, Crossan was entitled to the benefit of being treated by a physician well acquainted with her medical condition without the added pressure of having to bring a lawsuit. This is precisely what the Virginia Supreme Court intended in *Grubbs*.

Based on the facts articulated in Crossan's Second Amended Motion for Judgment, her cause of action did not accrue until January, 1992. Accordingly, defendants' Plea in Bar is overruled without prejudice to their right to assert a defense based on the statute of limitations if and when appropriate evidence has been adduced at trial.