## CIRCUIT COURT OF THE CITY OF NORFOLK

Ronald E. Hewlette, Jr.

v.

Dirk S. Proffer et al.

July 9, 2001

Case No. (Law) L00-569

BY JUDGE CHARLES E. POSTON

Today the Court sustains the defendants' special plea of the statute of limitations with respect to defendant Dirk S. Proffer, M.D., and overrules the same with respect to defendants Peter S. Jacobson, M.D., and Medical Center Hospital Pathologists Associates.

On December 12, 1995, plaintiff was involved in a motorcycle accident. Plaintiff's motorcycle, which was traveling somewhere between 25 and 35 m.p.h., struck a stationary car, causing plaintiff to hit the pavement. The crash fractured plaintiff's femur. He was transported from the accident scene to Virginia Beach General Hospital and was examined there by the emergency room physician, who called for an orthopedic consultation. Responding to a consultation call from the emergency room physician, Dr. Dirk Proffer determined, after examining the plaintiff, that an intramedually rodding was the best way to address the fracture. On December 13, 1995, Dr. Proffer attempted to fix the fracture by insertion of a metal rod through the broken femur.[1]

---

[1] Plaintiff alleges in the instant lawsuit, for the first time, that Dr. Proffer failed to detect the cancer from x-rays of December 12 and 13, 1995, and that the Plaintiff was injured when the rod was introduced because the rod allegedly spread his pre-

Dr. Proffer continued to treat the plaintiff through January and early February 1996. On February 10, 1996, Drs. Proffer and Jacobson operated on Mr. Hewlette's leg. Later in February 1996, another orthopedist, Dr. Peter Jacobson, took over plaintiff's care from Dr. Proffer. Dr. Proffer treated plaintiff one additional time, on June 28, 1996, when Dr. Proffer saw the plaintiff while covering for Dr. Jacobson.

Plaintiff's Motion for Judgment alleges that he was diagnosed with cancer in May of 1997, and he claims that the cancer should have been diagnosed earlier. He first filed suit against these defendants on December 31, 1998. Plaintiff nonsuited his claims against these defendants on February 22, 2000, and filed a new action on March 17, 2000.

The statute of limitations for personal injuries is two years. Code of Virginia § 8.01-243. Dr. Proffer testified at the evidentiary hearing that he last treated the plaintiff on June 28, 1996. Dr. Jacobson testified at the evidentiary hearing that he treated the plaintiff from the end of January 1996, until January 3, 1997. Both parties agreed that these dates are accurate. Plaintiff asserts that under the continuing treatment doctrine, the statute of limitations commenced to run when the improper course of examination and treatment by both physicians for his particular malady terminated and that his claims are not barred by the statute of limitations. Assuming, arguendo, that the continuing treatment doctrine applies in this case, the Supreme Court of Virginia's holdings apply to a continuing course of treatment by a single physician, or continuing course of treatment by physicians providing joint treatment.

The Supreme Court first applied the continuing treatment doctrine in *Farley v. Goode*, 219 Va. 969, 252 S.E.2d 594 (1979). In *Farley*, a dentist failed to diagnose the plaintiff's periodontal disease, causing the plaintiff to undergo extensive treatment. The Court stated that the right of action arose from a continuous tort, failure to diagnose, as opposed to a single, isolated, non-continuing wrongful act. The court held:

> [W]hen malpractice is claimed to have occurred during a continuous and substantially uninterrupted course of examination and treatment in which a particular illness or condition should have been diagnosed in the exercise of reasonable care, the date of injury occurs, the cause of action for that malpractice accrues, and the statute of limitations commences to run when the improper course of examination, and treatment, if any, for the particular malady terminates.

---

existing, but undiagnosed cancer. Defendant asserts that Plaintiff's cause of action regarding Dr. Proffer accrued, at the latest, on December 13, 1995.

*Id.* at 976, 252 S.E.2d at 599. The Court cited cases from other jurisdictions in which the continuing treatment doctrine applied, and in each of the cited cases, the statute of limitations began when the treatment "for the same or related illnesses or injuries," by the allegedly negligent physician. None of the cited cases involved treatment by more than one medical provider.

The Court revisited the continuing treatment doctrine in *Fenton v. Danaceau*, 220 Va. 1, 255 S.E.2d 349 (1979), in which the defendant began a course of medical treatment that included surgery, post-operative care, and a second surgery. The Supreme Court held that the defendant provided a "continuous and substantially uninterrupted course of examination and treatment in which, according to the allegations, a particular condition was improperly treated and diagnosed," and that the statute of limitations commenced to run when the improper course of examination and treatment ended at the second surgery. *Id.* at 3-4, 255 S.E.2d at 350.

The Supreme Court in *Justice v. Natvig*, 238 Va. 178, 381 S.E.2d 8 (1989), considered a situation in which a defendant physician claimed, among other things, that his treatment was not continuous because the plaintiff saw other physicians during the period at issue. The Court noted that two of the physicians were referred by the defendant to treat the plaintiff for complications secondary to the defendant's surgery and that the defendant continued his treatment of the plaintiff even after the referring physicians' treatment. Neither referral broke the continuity of the defendant's treatment. *Id.* at 181, 381 S.E.2d at 10.

In *Grubbs v. Rawls*, 235 Va. 607, 369 S.E.2d 683 (1988), the Supreme Court considered a case in which the plaintiff claimed the defendants jointly treated her for a stomach ailment. The Court held that the plaintiff had "the right under *Farley-Fenton* to wait until the doctors completed their treatment before she was compelled to sue." *Id.* at 613, 369 S.E.2d at 687. The plaintiff underwent surgery to correct a condition allegedly caused by the defendant's treatment, on May 10, 1983, but the Court did not use that date as the starting point for running the statute of limitations; rather the Court emphasized individual termination dates of treatment by each doctor, in order to determine the applicable statute of limitations. This case is distinguishable from *Fenton* because in *Fenton*, the same defendant performed the later corrective surgery and the statute of limitations ran from the second surgery; in *Grubbs*, the corrective surgery was not performed by either of the defendants, and thus the statute of limitations for each individual defendant began to run at the completion of the treatment by each individual defendant, not at the second surgery and the completion of treatment as a whole. *Grubbs* does not provide a separate standard for a "joint treatment" situation; the statute of limitations

was determined for each physician separately and independently of their joint treatment of the plaintiff.

In *Grubbs*, the Supreme Court addressed the public policy reason for the continuing treatment doctrine:

> [A]s long as the physician-patient relationship continued as to a particular malady or injury, then it could not be said that treatment had ceased. Another part of our rationale in *Farley* was that unless a patient could properly wait to the end of treatment before being required to sue his or her physician, suits might have to be brought while the physician was in the midst of effecting a cure. We noted further that permitting a patient to wait until the termination of treatment before being required to file suit was conducive to mutual confidence between physician and patient because it gave the physician all reasonable time and opportunity to correct mistakes made at the beginning of a course of treatment.
>
> In *Farley*, we added an essential limitation on the rule of continuing treatment. We said it did not apply simply to a continuation of the physician-patient relationship. Instead, for the rule to apply, there had to exist continuing diagnosis and treatment for the same or related illnesses or injuries after the alleged acts of malpractice. We added further that the *Farley* rule applied only to "a continuous course of improper examination or treatment which is substantially uninterrupted" and not to single, isolated acts of negligence.

*Id.* at 611-12, 369 S.E.2d at 686 (citing *Farley v. Goode*, 219 Va. 969, 980, 252 S.E.2d 594, 601 (1979)).

In the instant case, it is clear that defendants Proffer and Jacobson were not providing joint treatment to the plaintiff; even if they were, the statute of limitations would be individually applied to each defendant, according to *Grubbs*. Dr. Proffer's treatment ended with the plaintiff's last visit on June 28, 1996. The statute of limitations period with respect to the plaintiff's claim against Dr. Proffer has expired and thus the plaintiff's claim against him is barred.

Defendants interpret the plaintiff's claims against Dr. Jacobson and the corporate defendants as sounding in vicarious liability. The Motion for Judgment, however, is clear in asserting that Dr. Jacobson is personally liable for his own alleged negligence in treating the plaintiff, not for being vicariously liable for Dr. Proffer's alleged negligence. Likewise, the claims

against the corporate defendants are for their alleged vicarious liability for actions of both Dr. Proffer and Dr. Jacobson. Dr. Jacobson testified at the evidentiary hearing that his treatment of the plaintiff ended on January 3, 1997. The Plaintiff filed his original Motion for Judgment on December 31, 1998, within the two-year statute of limitations period, thus the plaintiff's claim against Dr. Jacobson is not barred.

With respect to the corporate defendants, the Bill of Particulars in the original lawsuit reads as follows: "With regard to each of the professional corporations that are defendants in this action each of these corporations is liable under the doctrine of respondeat superior for the acts of their respective employees which are set forth above." This allegation is not found in the instant Motion for Judgment; however, the defendant has drawn the inference from the other facts and allegations in the Motion for Judgment (specifically paragraph 6) that the plaintiff is asserting claims sounding in vicarious liability against the professional corporations. Because the claims against Dr. Jacobson are not time barred, claims against the professional corporations based on vicarious liability for Dr. Jacobson's alleged acts of negligence are also not time barred. Defendants admit as much in the last sentence of their reply brief when they ask the Court to enter an order "narrowing plaintiff's allegations against the group to certain conduct alleged in plaintiff's original Motion for Judgment in CL98-3142, of Dr. Jacobson only."

The claims against Dr. Proffer are time barred, as he ceased treating the plaintiff on June 26, 1996, and the initial Motion for Judgment was not filed until December 31, 1998, two years and six months later. The claims against Dr. Jacobson and the professional corporations are not time barred, as he ceased treating the plaintiff on January 3, 1997, and the original Motion for Judgment was filed less than two years later.