Present:  Kinser, C.J., Lemons, Goodwyn, Millette, and Mims
JJ., and Russell and Koontz, S.JJ.

ALYSSA CHALIFOUX                         OPINION BY
                              SENIOR JUSTICE LAWRENCE L. KOONTZ, JR.
v. Record No. 100052                 April 21, 2011

RADIOLOGY ASSOCIATES
OF RICHMOND, INC.


          FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                 Clarence N. Jenkins, Jr., Judge

     In this medical malpractice case, we consider whether

services rendered by a radiology group were single, isolated

acts or a part of the patient's continuing treatment for the

purpose of determining when the statute of limitations began

to run.

                           BACKGROUND

     In December 2002, Alyssa Chalifoux saw her family

physician, Dr. David Stein, after experiencing headaches and

other symptoms on the right side of her face.  Dr. Stein

referred Chalifoux for a brain magnetic resonance imaging

("MRI") with Radiology Associates of Richmond, Inc.

("Radiology Associates") at Henrico Doctors' Hospital.

     The requested brain MRI was performed on December 23,

2002.  Dr. Robert Y. Fidler, Jr., a radiologist at Radiology

Associates, interpreted the MRI and found no abnormalities.

On December 24, 2002, Dr. Fidler electronically signed a

report of his findings and issued the results to Dr. Stein.

Dr. Stein thereafter referred Chalifoux to Dr. John D. Blevins, a neurologist. Chalifoux saw Dr. Blevins on March 4, 2003 after experiencing severe pain on the right side of her face. Dr. Blevins referred Chalifoux to Radiology Associates for another brain MRI and a magnetic resonance angiography ("MRA") of the head.

The requested brain MRI and head MRA were performed on March 9, 2003. Dr. A. John Kuta, a neuroradiologist at Radiology Associates, read the images and reported no abnormalities. Dr. Kuta electronically signed his reports and issued the results to Dr. Blevins on March 10, 2003.

Dr. Blevins continued to care for Chalifoux. According to Dr. Blevins' records, Chalifoux experienced numbness on the right side of her face on April 11, 2003 and July 21, 2003.[1] After the July visit, Dr. Blevins recommended another brain MRI to evaluate Chalifoux's symptoms. Dr. Blevins added that if the tests were negative, Chalifoux could follow-up in six months.

---

[1] Additionally, Chalifoux saw Dr. Blevins on March 17, 2003 after developing additional pain in her joints and neck. Dr. Blevins ordered an MRI of her cervical spine. Dr. Steven M. Wiebe-King, a radiologist at Radiology Associates, read the MRI and found some straightening of the cervical spine, a left lateral disc protrusion, and a small central disc herniation. Dr. Wiebe-King electronically signed a report of his findings and issued the results to Dr. Blevins on March 10, 2003.

On August 2, 2003, Chalifoux received another brain MRI and an imaging of the skull. Dr. J. Keith Thompson, a radiologist at Radiology Associates, read the images and reported no abnormalities. Dr. Thompson electronically signed his reports and issued the results to Dr. Blevins on August 2, 2003. Approximately six months later, Chalifoux received another brain MRI. Dr. Thompson issued another brain MRI report to Dr. Blevins on February 16, 2004. Again, Dr. Thompson found no abnormalities.

Chalifoux saw Dr. Blevins again on October 17, 2005 for her ongoing pain and numbness on the right side of her face. Dr. Blevins ordered another brain MRI. On October 22, 2005, Chalifoux received an MRI of the internal auditory canal. This time, Dr. Kuta detected an "abnormality in the region of the right cavernous sinus." In his report, Dr. Kuta noted that the abnormality "probably has been the cause of the patient's clinical symptoms and in retrospect is visible on the previous exams dating to 12-23-02." Dr. Kuta electronically signed his report and issued the results to Dr. Blevins on October 24, 2005.

Chalifoux filed suit against Radiology Associates on October 12, 2007 in the Circuit Court of the City of Richmond. Chalifoux later filed an amended complaint increasing the ad damnum. In her amended complaint, Chalifoux alleged that she

"exhibited symptoms on the right side of her face consistent with a tumor in the trigemenial region of her brain" from December 2002 through October 2005, and that Radiology Associates negligently read and interpreted various radiological studies that would have shown this tumor as early as December 2002.

Radiology Associates filed a plea of the statute of limitations and requested an evidentiary hearing. After receiving written memoranda and exhibits, the circuit court conducted the hearing on August 13, 2009. Radiology Associates asserted that Chalifoux's suit was time-barred by the two-year statute of limitations for personal injuries, and that the so-called "continuing treatment rule" does not apply in this instance because the care she received from the radiologists was episodic. Chalifoux admitted that Radiology Associates' reading and reporting of the October 22, 2005 MRI by Dr. Kuta was not negligent. She nonetheless maintained that her suit was timely under the continuing treatment rule because she filed her suit within two years of when the physician-patient relationship ended. In support of their positions, both parties presented testimony by experts in the field of radiology.

Radiology Associates' expert witness, Dr. Karsten F. Konerding, testified that radiology is a consulting practice.

4

Dr. Konerding considers a radiologist's care episodic in nature, and that, in the majority of cases, radiologists do not have a continuing relationship with a patient who has come for a single examination or even a series of examinations. Dr. Konerding added that a radiologist rarely, if ever, interacts directly with the patient, and that a radiologist's findings are reported to the referring physician, rather than the patient. Dr. Konerding acknowledged that "if prior examinations are available, good practice may require comparison with previous examinations." The reason for this practice, according to Dr. Konerding, is to determine if any current abnormalities are present on the prior studies and, if so, to discern the significance of those abnormalities. Dr. Konerding reiterated that a radiologist's relationship with the patient ends when the radiologist delivers the report and interpretation of the images to the referring physician.

Chalifoux's expert witness, Dr. Maurice H. Lipper, testified that there was a continuum of care in this case because "the patient had presented to the same practice with the same symptoms and the same problems." Dr. Lipper relied on several factors when making this determination, including the fact that all of Chalifoux's studies were filed in the same place, Radiology Associates billed Chalifoux directly for the services it provided, and Chalifoux's referring physicians

5

referred her to Radiology Associates each time they wanted additional imaging studies.  Dr. Lipper added that when a radiologist reads a patient's image, the radiologist will pull up the patient's file and review the patient's previous examinations to see if there are any examinations relevant to the one the radiologist is reading.

Chalifoux also submitted into evidence the deposition transcript of Dr. Howard F. Faunce, the president and corporate designee of Radiology Associates.  Dr. Faunce testified that Radiology Associates performs its services at Henrico Doctors' Hospital under a contract with the hospital.  Pursuant to that contract, radiology technologists employed by the hospital perform the medical imaging on the patient, while radiologists employed by Radiology Associates interpret the image and report the results to the ordering physician.  Dr. Faunce testified that typically the patient's "history" is communicated to Radiology Associates with each request for an image study.  Dr. Faunce explained that the "history" is the information about the patient's symptoms provided by the patient and/or the physician ordering the procedure.  Dr. Faunce added that all of Radiology Associates' imaging studies are stored in a computerized storage system in the same file under the patient's name and are available to the radiologists for review.

At the conclusion of the hearing, the circuit court took the matter under advisement. At a hearing on August 17, 2009, the court sustained Radiology Associates' plea of the statute of limitations. By letter opinion dated October 1, 2009, the circuit court ruled that Chalifoux's treatments were "single, isolated acts which do not toll the statute of limitations under the continuous treatment rule." The court found that the comparison of test results by Radiology Associates suggests adherence to appropriate diagnostic procedure, rather than an assumption of ongoing treatment. The court further found that the treatment rendered by the radiologists was terminated after Radiology Associates produced their reports and sent them to Chalifoux's clinical physicians.

The circuit court thereafter denied a motion for reconsideration by Chalifoux and dismissed the case. We awarded Chalifoux this appeal.

DISCUSSION

Chalifoux assigns error to the circuit court's failure to apply the continuing treatment rule to the facts of this case. Because this issue presents a mixed question of law and fact, we conduct a de novo review. Luria v. Board of Dirs. of Westbriar Condo. Unit Owners Ass'n, 277 Va. 359, 365, 672 S.E.2d 837, 840 (2009). In our review of the circuit court's application of the law to the facts, we give deference to the

7

circuit court's factual findings and view the facts in the light most favorable to Radiology Associates, the prevailing party below.  Id.

Medical malpractice actions are governed by the two-year statute of limitations for personal injuries.  Code § 8.01-243(A).[2]  Code § 8.01-230 provides that "the right of action shall be deemed to accrue and the prescribed limitation period shall begin to run from the date the injury is sustained in the case of injury to the person."  Thus, it is well established in Virginia that the statute of limitations begins to run when the plaintiff is injured, not when the plaintiff discovers the injury.  See Hawks v. DeHart, 206 Va. 810, 813,

---

[2] Code § 8.01-243(C)(3) provides that the two-year period specified in subsection (A) is tolled in the following circumstance:

> In a claim for the negligent failure to diagnose a malignant tumor or cancer, for a period of one year from the date the diagnosis of a malignant tumor or cancer is communicated to the patient by a health care provider, provided the health care provider's underlying act or omission was on or after July 1, 2008. Claims under this section for the negligent failure to diagnose a malignant tumor or cancer, where the health care provider's underlying act or omission occurred prior to July 1, 2008, shall be governed by the statute of limitations that existed prior to July 1, 2008.

Chalifoux has not alleged that Radiology Associates failed to diagnose a malignant tumor or cancer.  Even if she had, her claims are based on alleged acts of negligence that occurred prior to July 1, 2008. Accordingly, this case is governed by the statute of limitations found in Code § 8.01-243(A).

8

146 S.E.2d 187, 189 (1966); see also Van Dam v. Gay, 280 Va. 457, 460 n.2, 699 S.E.2d 480, 481 n.2 (2010) (noting that the Virginia General Assembly has consistently declined to adopt such a "discovery rule"). The continuing treatment rule operates as an exception. Under the continuing treatment rule, the statute of limitations begins to run at the conclusion of the course of treatment for a particular disease or condition. Harris v. K & K Insurance Agency, Inc., 249 Va. 157, 162, 453 S.E.2d 284, 286 (1995).

We first applied the continuing treatment rule in the context of healthcare treatment in Farley v. Goode, 219 Va. 969, 252 S.E.2d 594 (1979). That case involved a dentist's failure to diagnose and treat the plaintiff's periodontal disease over the course of several years. Id. at 971-73, 252 S.E.2d at 595-97. In deciding when the statute of limitations began to run on the plaintiff's claim of negligent diagnosis and treatment, we held:

> [W]hen malpractice is claimed to have occurred during a continuous and substantially uninterrupted course of examination and treatment in which a particular illness or condition should have been diagnosed in the exercise of reasonable care, the date of injury occurs, the cause of action for that malpractice accrues, and the statute of limitations commences to run when the improper course of examination, and treatment if any, for the particular malady terminates.

*Id.* at 976, 252 S.E.2d at 599. In applying these principles, we found that "the duty with reference to an accurate diagnosis persisted throughout the entire treatment because upon each diagnosis rested the correctness of any future conduct in respect to the periodontal disease," therefore, the statute of limitations began to run at the end of the dentist-patient relationship. *Id.* at 976-77, 252 S.E.2d at 599. We added, however, that the continuing treatment rule "presupposes that a continuous course of improper examination or treatment which is substantially uninterrupted is proved as a matter of fact." *Id.* at 980, 252 S.E.2d at 601. But "[w]here the malpractice complained of constitutes a single, isolated act," the statute of limitations commences to run from the date of the injury. *Id.*

We subsequently explained in *Grubbs v. Rawls*, 235 Va. 607, 611-12, 369 S.E.2d 683, 686 (1988) the rationale behind the continuing treatment rule:

> Part of our rationale in *Farley* was that as long as the physician-patient relationship continued as to a particular malady or injury, then it could not be said that treatment had ceased. Another part of our rationale in *Farley* was that unless a patient could properly wait to the end of treatment before being required to sue his or her physician, suits might have to be brought while the physician was in the midst of effecting a cure. We noted further that permitting a patient to wait until the termination of treatment before being required to file suit was conducive to mutual confidence between physician and patient because it gave the physician all reasonable

10

> time and opportunity to correct mistakes made at the beginning of a course of treatment.

We further explained that Virginia has a true continuing treatment rule in that "if there existed a physician-patient relationship where the patient was treated for the same or related ailments over a continuous and uninterrupted course, then the plaintiff could wait until the end of that treatment to complain of any negligence which occurred during that treatment." Id. at 613, 369 S.E.2d at 687.

In this case, it is undisputed that Radiology Associates and Chalifoux had a physician-patient relationship. Thus, the dispositive issue is whether "a continuous and substantially uninterrupted course of examination and treatment" existed between Chalifoux and Radiology Associates, or whether Radiology Associates' treatment of Chalifoux was a series of "single, isolated act[s]." Farley, 219 Va. at 976, 980, 252 S.E.2d at 599, 601.

Chalifoux contends that the circuit court erred in failing to properly apply the continuing treatment rule when it sustained Radiology Associates' plea of the statute of limitations. Chalifoux maintains that the sheer fact she repeatedly returned to Radiology Associates for brain studies with the same or similar symptoms is indicative of a continuing course of examination and diagnosis. Chalifoux

11

asserts that this continuing course of examination and diagnosis terminated on October 24, 2005 when Radiology Associates properly diagnosed and reported her tumor for the first time.  Chalifoux therefore maintains that her suit filed on October 12, 2007 was within the two-year statute of limitations.

Radiology Associates responds that the statute of limitations has run on Chalifoux's medical malpractice action, and that the circuit court correctly ruled the continuing treatment rule did not apply.  According to Radiology Associates, the last arguable date for Chalifoux's medical malpractice action to accrue was February 16, 2004, the date of the last brain MRI which she claims was negligently reported and interpreted.  Radiology Associates maintains the court made a correct factual determination, based on the evidence before it, that the role of the radiologists in this case consisted of single, isolated acts and not continuing care.

While we have not previously considered whether the continuing treatment rule applies to radiologists, other jurisdictions have addressed this issue.  For instance, the circuit court relied on Baker v. Radiology Associates, P.A., 35 S.W.3d 354 (Ark. Ct. App. 2000).  In that case, the plaintiff received nine annual mammogram screenings over a

12

period of ten years from a radiology group.  Id. at 355.

After a cancerous mass was detected in the plaintiff's left

breast, she filed a medical malpractice action against the

radiology group and the radiologists for failing to detect the

irregularity in previous mammograms.  Id. at 355.  The

plaintiff maintained that her complaint was timely under the

"continuous course of treatment doctrine," but the trial court

disagreed.  Id. at 355-56.  The Court of Appeals of Arkansas

held that "the trial court did not err in concluding that the

continuous course of treatment [doctrine] did not apply to the

diagnoses rendered by the radiologists" since "the mammograms

were conducted for screening purposes only" and "there [was]

no indication that the radiologists were engaged in any active

consultation with the gynecologist or in the ongoing treatment

of appellant for any specific condition."  Id. at 359.

A similar result was reached in Grey v. Stamford Health

System, Inc., 924 A.2d 831 (Conn. 2007).  As in Baker, the

allegedly negligent conduct occurred during the course of a

series of routine breast cancer diagnostic examinations.  Id.

at 842.  In deciding not to apply the "continuous treatment

doctrine," the Supreme Court of Connecticut observed that

"[t]he plaintiff had no suspicious symptoms and was not

receiving ongoing treatment from any physician for any

particular breast condition."  Id.  The court reasoned:

13

> Because routine periodic treatment, by its very
> nature, has no natural termination point and cannot
> culminate in a cure, it does not implicate the
> public policy in favor of allowing the plaintiff to
> terminate a course of treatment before [commencing]
> the statute of limitations in order to avoid
> disputes over the date of the negligent conduct and
> to protect the doctor-patient relationship until a
> cure is achieved.

Id. at 842-43.  The court noted, however, that among the courts that have applied the continuous treatment doctrine to services provided by "consultative diagnostic practitioners," many have held that there must be some evidence that the plaintiff "was being treated or monitored continuously for a particular, existing medical condition and that he or she reasonably anticipated ongoing diagnostic tests in connection with such treatment."  Id. at 843 n.11.

For example, in Montgomery v. South County Radiologists, Inc., 49 S.W.3d 191, 192-93 (Mo. 2001) the plaintiff's neurosurgeon referred him for diagnostic radiological services in order to determine the cause of his chronic lower back pain.  On three occasions in a nine-month period, radiologists from a radiology group interpreted x-rays and MRIs, but failed to diagnose a cancerous tumor on the plaintiff's spine.  Id. at 193.  The trial court ruled that the plaintiff's suit for medical negligence against the radiology group was time-barred by the two-year statute of limitations.  Id.  On appeal, the radiology group maintained that each interpretation of an x-

14

ray or MRI is a "discrete, intermittent service" so the "continuing care" exception to the two-year statute of limitations did not apply.  Id. at 194.  The Supreme Court of Missouri disagreed, holding that while the radiology group's "obligations are not as comprehensive as the treating physician's, its services are of such a nature to charge it with accurately interpreting and comparing x-rays and MRIs for the same complaint by the same patient about the same part of the body, three times within a nine-month period."  Id. at 195.

The facts of this case are similar to those in Montgomery.  Between December 2002 and October 2005, Chalifoux's treating physicians referred her to Radiology Associates on six occasions for diagnostic radiology studies. During that time, Radiology Associates studied and interpreted seven scans of Chalifoux's brain and head.  Each study related to the same or similar symptoms:  the pain and numbness on the right side of Chalifoux's face.[3]  There is evidence that Radiology Associates was aware of Chalifoux's ongoing symptoms because all the studies were kept in one file under Chalifoux's name, and both experts in this case testified that

_____

[3] According to the reports generated by Radiology Associates, Chalifoux exhibited symptoms such as right-sided paresthesias, headaches, sensation disorder, facial pain, and trigeminal neuralgia.

15

radiologists frequently review previous examinations, especially when they relate to the same symptoms.

Under these facts, we find "a continuous and substantially uninterrupted course of examination and treatment" existed between Chalifoux and Radiology Associates. Farley, 219 Va. at 976, 252 S.E.2d at 599. We therefore hold that the circuit court erred in not applying the continuing treatment rule to the facts of this case. Accordingly, the statute of limitations began to run on October 24, 2005, the day the physician-patient relationship between Radiology Associates and Chalifoux ended. Thus, her suit brought on October 12, 2007 was within the applicable two-year statute of limitations.

CONCLUSION

For these reasons, we hold that the circuit court erred in sustaining Radiology Associates' plea of the statute of limitations. Therefore, we will reverse the judgment of the circuit court and remand the case for further proceedings consistent with this opinion.[4]

Reversed and remanded.

SENIOR JUSTICE RUSSELL, with whom JUSTICE GOODWYN joins, dissenting.

_____

[4] In light of our resolution of this appeal on the application of the continuing treatment rule, we need not address the remaining issue raised.

16

Undoubtedly, radiologists frequently act as treating physicians, but there is no evidence that they ever did so in the present case. Indeed, the circuit court made a finding of fact from the evidence that the radiologists did not assume a duty of providing treatment to Alyssa Chalifoux. Rather, the court found that the radiologists assumed a duty to adhere to "appropriate diagnostic procedure." We are bound by that finding.

When an appeal presents a mixed question of law and fact, the factual findings of the trial court are entitled to the same weight as a jury verdict. Although conclusions of law are reviewed de novo, the trial court's findings of fact will not be set aside unless they are plainly wrong or without evidence to support them. Transcontinental Ins. Co. v. RBMW, Inc., 262 Va. 502, 510, 551 S.E.2d 313, 317 (2001). We have specifically held that standard of review applicable where a trial court has heard evidence on a claim that the statute of limitations has been tolled. Fines v. Kendrick, 219 Va. 1084, 1086-88, 254 S.E.2d 108, 110-11 (1979). The majority opinion appears to have abandoned that well-settled standard of review by finding, from the same evidence the circuit court heard and weighed, that the radiologists undertook the duty of providing a continuing course of care and treatment to the plaintiff.

The "continuing treatment rule" was first applied in Virginia in Farley v. Goode, 219 Va. 969, 976-77, 252 S.E.2d 594, 599-600 (1979).  There, a dentist undertook the continuing care and treatment of a patient's teeth over a period of four years, during which he failed to diagnose and treat periodontal disease.  We held that on those facts, "when malpractice is claimed to have occurred during a continuous and substantially uninterrupted course of examination and treatment," the cause of action accrues when the course of treatment terminates.  Id. at 976, 252 S.E.2d at 599.  As the majority opinion points out, the rationale for the continuing treatment rule is threefold:  (1) to prevent the injustice of requiring the patient to sue the physician while the physician is trying to effect a cure, (2) to acknowledge the importance of maintaining mutual confidence between physician and patient during the course of treatment, and (3) to give the physician a reasonable time to correct any mistakes made at the beginning of treatment.  Those considerations apply exclusively to a defendant who is a treating physician.  We made that abundantly clear in Farley, where we said:  "We observe . . . that by 'continuous treatment' we do not mean mere continuity of a general physician-patient relationship; we mean diagnosis and treatment for the same or related illnesses or injuries, continuing after the alleged acts of

18

malpractice." Id. at 979, 252 S.E.2d at 600 (citation and quotation marks omitted) (emphasis added).

The dispositive question, therefore, is whether the radiologists were treating physicians with respect to the plaintiff in this case. The circuit court, after hearing the evidence, found that they were not. That finding is not plainly wrong and is fully supported by the evidence.

The plaintiff did not select the radiologists and had no connection with them. She was sent to a local hospital by her family doctor and treating neurologist, on five separate occasions in 2002, 2003 and 2004, to obtain radiology imaging studies. There, she was subjected to the studies selected by her treating physicians. The studies were administered by technicians employed by the hospital, using the hospital's equipment. The test results were later interpreted by the defendant radiologists who made their reports directly to the treating physicians, not to the plaintiff. The plaintiff did not employ the radiologists to care for her, to prescribe treatment for her, or to follow up on her future course of treatment, and they never did so. They were selected only by her treating physicians as diagnostic consultants and they played no other role. Their position, vis-a-vis the plaintiff, was analogous to that of a laboratory to which a

treating physician sends blood or urine samples for analysis and reports.

That evidence, in my view, fully supports the circuit court's finding that the radiologists' relationship with the plaintiff was episodic, not continuing care, and that they were not her treating physicians to whom the continuing treatment rule would apply.

The circuit court found that the radiologists assumed only the duty to adhere to appropriate diagnostic procedures in this case. The plaintiff's evidence was that the last breach of that duty was in 2004. This action, filed in 2007, was barred by the two-year statute of limitations unless the continuing treatment exception applies. Code § 8.01-243(A). Because I consider the majority opinion to be an extension of that exception unwarranted by these facts, I respectfully dissent.