COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Athey, Causey and Callins
Argued at Winchester, Virginia


RENEE B. JAUREGUI
                                          MEMORANDUM OPINION* BY
v.       Record No. 1133-23-4          JUDGE DORIS HENDERSON CAUSEY
                                              NOVEMBER 12, 2024
SHANNON J. COTHRAN, M.D.


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Richard E. Gardiner, Judge

John S. Koehler (Kenneth J. LaDuca; The Law Office of James
Steele, PLLC; Price Benowitz, LLP, on briefs), for appellant.

Susan L. Mitchell (Matthew D. Banks; Catherine E. Donnelly;
Mitchell Banks, PC, on brief), for appellee.


Renee Jauregui appeals the circuit court's dismissal of her complaint alleging medical

malpractice against Shannon J. Cothran, M.D. Jauregui argues that the circuit court erred in finding

that the continuing treatment rule did not extend her statute of limitations. We agree and reverse the

judgment of the circuit court.

## BACKGROUND

Renee Jauregui filed a complaint in Fairfax County Circuit Court on June 30, 2021,

asserting a medical malpractice claim against Dr. Shannon J. Cothran and Capital Women's

Care, LLC.[1] Jauregui alleged that she informed Dr. Cothran of a lump in her breast during four

pregnancy-related visits with Dr. Cothran between May and October 2018. The complaint stated

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] The circuit court granted Jauregui's motion for partial nonsuit of other defendants
named in the complaint.

that Dr. Cothran told Jauregui there was no reason for concern, that the lump was a normal response to pregnancy, and that diagnostic testing would not display any useful information. The complaint claimed that Jauregui "did not seek a mammogram or ultrasound" due to this advice, but returned to Dr. Cothran in August 2019 to follow-up on the lump. Subsequent diagnostic testing revealed the lump was breast cancer. The complaint asserted that Dr. Cothran's negligence in failing to properly diagnose or treat Jauregui for her symptoms resulted in a metastasized cancer significantly more difficult to treat. Jauregui argued that she was entitled to compensation for medical malpractice.

Dr. Cothran filed a plea in bar asserting that the two-year statute of limitations under Code § 8.01-243(A) precluded Jauregui's claim. The controlling legal issue rested on whether Virginia's "continuing treatment rule," which tolls the statute of limitations for medical malpractice until the course of improper examination and treatment ends, served to extend the statute of limitations beyond the date of the October 2018 visit, "the last date that Dr. Cothran provided any alleged improper treatment for the negligently diagnosed condition."[2] *See Farley v. Goode*, 219 Va. 969, 976 (1979) ("[W]hen malpractice is claimed to have occurred during a continuous and substantially uninterrupted course of examination and treatment . . . the statute of limitations commences to run when the improper course of examination, and treatment if any, for the particular malady terminates.").

Dr. Cothran argued by motion that she provided no examination or treatment for Jauregui's symptoms until the August 2019 visit; thus, there was no "continuous and

---

[2] The parties agree that the COVID-19 emergency orders tolled the statute of limitations for 126 days and that only the August 2019 visit therefore fell within the tolling period. Because the alleged negligence occurred during those prior visits, Jauregui's claim is time-barred absent application of the continuing treatment rule.

substantially uninterrupted" treatment during that period.  Jauregui argued by brief that the facts set forth in the complaint fell within the continuing treatment rule.

The circuit court held an evidentiary hearing to determine factual and legal issues for the plea in bar.  Jauregui testified that she first told Dr. Cothran about the lump in a May 2018 visit and that Dr. Cothran examined the lump and diagnosed it as a clogged milk duct, a routine and benign pregnancy issue.  Jauregui stated that Dr. Cothran repeated this examination and advice at office visits in August and September of 2018.  Jauregui then testified that at her postpartum visit with Dr. Cothran on October 24, 2018, she again mentioned the lump, believing it had gotten bigger and closer to the skin, and Dr. Cothran provided the same analysis and advice.  Jauregui claimed that Dr. Cothran advised that imaging on a breast producing milk would be cloudy, that Jauregui would need to stop pumping for diagnostics to show anything, and that the lump would resolve with continued pumping.  Jauregui testified that Dr. Cothran told her that if she noticed any changes in the lump, she should call Dr. Cothran's office.  When Jauregui noticed that change in July 2019, she scheduled a follow-up appointment for August 19, 2019.  Subsequent diagnostic testing discovered that the lump was cancer.

Dr. Cothran testified and disputed that Jauregui ever mentioned the lump during any 2018 visit; she stated she never examined Jauregui's breast or told Jauregui to monitor the lump and report any changes.  Dr. Cothran testified that after the October 2018 visit, she never expected to see Jauregui again.  Dr. Cothran introduced the notes of the 2018 visits, which do not reference any complaints or advice related to a breast lump, and at times directly state there were no breast problems.  She also introduced the August 2019 record that indicated Jauregui "noticed the lump when she started breast feeding and was told initially that it could be a blocked duct.  The lump has gotten bigger and harder over the last year, but she was waiting until she stopped breast feeding to have it looked at."

The parties provided competing medical expert opinions as to whether the doctor-patient relationship continued between Dr. Cothran and Jauregui after the October 2018 visit and whether that visit concluded Jauregui's care.

Ruling from the bench, the circuit court first concluded that, under *Farley v. Goode*, 219 Va. 969 (1979), and *Chalifoux v. Radiology Associates of Richmond, Inc.*, 281 Va. 690 (2011), "the proper standard" to be applied under the continuing treatment rule "is the continuous and substantially uninterrupted course of examination *and* treatment." (Emphasis added). Applying the rule, the court found that "there was no treatment in this case at all," emphasizing that the recommended breast pumping was not treatment. Second, the circuit court found that despite Jauregui's testimony—which the court appeared to accept—that Dr. Cothran had examined the lump in October 2018, and advised her to call and set up an appointment if anything changed, there was no substantially uninterrupted course of examination. Rather, the circuit court found there was a "substantially *interrupted* course of examination." (Emphasis added). The circuit court emphasized that the doctor "knew [that Jauregui] may never, ever have to come back" and did not forecast any need for additional treatment.

Finding that both elements of *Farley* did not apply, the circuit court sustained the plea in bar and dismissed the suit for failure to comply with the statute of limitations. This appeal followed.

## ANALYSIS

In three assignments of error, Jauregui asserts that the continuing treatment rule applied between the October 24, 2018 and August 18, 2019 visits and that the circuit court therefore erred in finding her claim time-barred. We agree.

A circuit court's "decision on a plea in bar of the statute of limitations involves a question of law that we review de novo." *Radiance Cap. Receivables Fourteen, LLC v. Foster*, 298 Va.

- 4 -

14, 19 (2019) (quoting *Van Dam v. Gay*, 280 Va. 457, 460 (2010)). "The movant bears the burden of proof on such a plea, and if evidence is presented ore tenus, the circuit court's factual findings 'are accorded the weight of a jury finding and will not be disturbed on appeal unless they are plainly wrong or without evidentiary support.'" *Cornell v. Benedict*, 301 Va. 342, 349 (2022) (quoting *Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019)).

Medical malpractice actions are controlled by a two-year statute of limitations. Code § 8.01-243(A). "[I]t is well established in Virginia that the statute of limitations begins to run when the plaintiff is injured, not when the plaintiff discovers the injury." *Chalifoux*, 281 Va. at 696. The continuing treatment rule, however, operates as an exception to this general rule. Under the continuing treatment rule, "the statute of limitations begins to run at the conclusion of the course of treatment for a particular disease or condition." *Id.* at 697. The question of whether the continuing treatment rule was correctly applied to a set of facts is an "issue [that] presents a mixed question of law and fact" and is reviewed de novo; however, "the continuing treatment rule 'presupposes that a continuous course of improper examination or treatment which is substantially uninterrupted is proved as a matter of fact.'" *Id.* at 696-97. "In our review of the circuit court's application of the law to the facts, we give deference to the circuit court's factual findings and view the facts in the light most favorable to . . . the prevailing party below." *Id.* at 697. Here, the prevailing party is Dr. Cothran.

The continuing treatment rule was first applied in *Farley*. When presented with a dentist's negligent care between 1972 and 1976, the Supreme Court of Virginia held:

> when malpractice is claimed to have occurred during a continuous and substantially uninterrupted course of examination and treatment in which a particular illness or condition should have been diagnosed in the exercise of reasonable care, the date of injury occurs, the cause of action for that malpractice accrues, and the statute of limitations commences to run when the improper course of examination, and treatment if any, for the particular malady terminates.

219 Va. at 976. The Court noted that holding otherwise would put patients in the difficult position of needing to file lawsuits "in the midst of a course of treatment," that doctors "should have all reasonable time and opportunity to correct mistakes," and that the continuing treatment rule preserved the "highly essential" patient-doctor relationship. *Id.* at 978. The Court explained that "[i]t would be absurd to require a wronged patient to interrupt corrective efforts by serving a summons on the physician or hospital superintendent or by filing a notice of claim in the case of a city hospital." *Id.* at 979 (quoting *Borgia v. City of New York*, 187 N.E.2d 777, 779 (N.Y. 1962)). Thus, the Court found that Farley's statute of limitations for her malpractice claim against her dentist started in 1976, not 1972, and the circuit court erred in sustaining the plea in bar. *Id.* at 977, 982.

## I. "Examination, and Treatment If Any"

In reviewing the circuit court's application of this rule here, we first determine whether Dr. Cothran's examinations and statements regarding the lump qualify as "examination and treatment" under the continuing treatment rule. The *Farley* Court held that "the statute of limitations commences to run when the improper course of examination, *and treatment if any*, for the particular malady terminates." 219 Va. at 976 (emphasis added).[3] The phrase "and treatment if any" indicates that the continuing treatment rule applies in the absence of treatment, when improper examinations have resulted in a *failure* to properly treat.[4]

---

[3] *See also Fenton v. Danaceau*, 220 Va. 1, 3 (1979) (same); *Grubbs v. Rawls*, 235 Va. 607, 611 (1988) (same); *Justice v. Natvig*, 238 Va. 178, 180 (1989) (same); *Chalifoux*, 281 Va. at 697 (same).

[4] That the circuit court here, in reviewing the same line of cases, found that there must be a continuous and substantially uninterrupted course of examination *and* treatment, traces to ostensibly equivocal presentations of the continuing treatment rule. Indeed, the language used in *Farley* and subsequent decisions could yield a mixed impression as to whether examination *and* treatment, or examination *or* treatment, is required for the continuing treatment rule to apply. *Compare, e.g.*, *Farley*, 219 Va. at 980 ("Parenthetically, we note that the rule applied today presupposes that a continuous course of improper examination or treatment which is

- 6 -

This understanding of the continuing treatment rule is also consistent with malpractice claims in general. "Malpractice" is defined as "any tort action or breach of contract action or personal injuries or wrongful death, based on health care or professional services rendered, *or which should have been rendered*, by a health care provider, to a patient." Code § 8.01-581.1 (emphasis added). The lack of treatment stemming from a faulty diagnosis is thus a clearly established basis for malpractice, and the continuing treatment rule is meant to preserve malpractice claims for the duration of a plaintiff's "improper course of examination, and treatment if any" for that type of claim. *Farley*, 219 Va. at 976

In *Chalifoux*, our Supreme Court applied the continuing treatment rule to doctors who had only engaged in examination and diagnosis. 281 Va. at 700-01.

> Between December 2002 and October 2005, Chalifoux's treating physicians referred her to Radiology Associates on six occasions for diagnostic radiology studies. During that time, Radiology Associates studied and interpreted seven scans of Chalifoux's brain and head. Each study related to the same or similar symptoms: the pain and numbness on the right side of Chalifoux's face. There is evidence that Radiology Associates was aware of Chalifoux's ongoing symptoms because all the studies were kept in one file under Chalifoux's name, and both experts in this case testified that radiologists frequently reviewed previous examinations, especially when they relate to the same symptoms.

*Id.* The Court held that under these facts, the continuing treatment rule applied. *Id.* at 701. These facts fit within the holding of *Farley* because the improper radiological examinations led to a lack of a diagnosis which delayed Farley's necessary treatment; when corrected, the full process was "a continuous and substantially uninterrupted course of examination and treatment." *Id.* (quoting *Farley*, 219 Va. at 976).

---

substantially interrupted is proved as a matter of fact."), *with Chalifoux*, 281 Va. at 698 ("Thus, the dispositive issue is whether 'a continuous and substantially uninterrupted course of examination and treatment' existed between Chalifoux and Radiology Associates[.]").

The facts here are analogous to those in *Chalifoux*. Dr. Cothran examined Jauregui based on specific, on-going complaints. That examination led to an incorrect diagnosis which delayed the necessary treatment. This entire process constitutes "examination and treatment," just as it did in *Chalifoux*. The presence of specific *treatment* is not determinative.[5]

## II. "Continuous and Substantially Uninterrupted"

We next determine whether Dr. Cothran's course of examination of Jauregui qualifies as "continuous and substantially uninterrupted." *Farley*, 219 Va. at 976. The circuit court in this case found a "course of examination," appeared to find that Dr. Cothran examined the lump, and appeared to credit Jauregui's testimony that Dr. Cothran advised her that "if she saw any changes," she should "call the office and set up another appointment."[6] But despite these factual findings, the circuit court ruled that these instructions were insufficient to find that Jauregui's August 2019 visit was part of a "continuous and substantially uninterrupted" course of examination. We disagree.

Under *Farley*, the relevant question in determining whether the course of examination was "substantially uninterrupted" is not merely whether there was an ongoing physician-patient relationship, but whether that relationship concerns the "same or related illnesses or injuries." *Farley*, 219 Va. at 979 (quoting *Borgia*, 187 N.E.2d at 779).[7] So, in this case, Dr. Cothran's

---

[5] To the extent that Jauregui argues on brief that the circuit court judge erroneously found a lack of *examination* because of a lack of *treatment* in this case, we disagree. The circuit court described the sequence of events as showing "not a continuous and uninterrupted course of examination [but rather] in my view, clearly a substantially interrupted *course of examination*." (Emphasis added).

[6] Dr. Cothran urges this Court to affirm the circuit court on the grounds that these conversations never occurred because the testimony about them was in conflict. But the circuit court did not do so, and in fact appeared to find Jauregui's testimony more credible by referencing one of these conversations in its ruling.

[7] Similarly, the Court in *Grubbs* said:

> The rule of decision in [*Farley* and *Fenton v. Danaceau*] was not
> that the negligence of the defendant physician extended until the

expectations about whether Jauregui would return are not dispositive; rather, what matters is that Jauregui later did return, pursuant to Dr. Cothran's instructions, for further examination of the same condition.

When Jauregui raised her concerns in the October 2018 visit, Dr. Cothran provided a diagnosis of a clogged milk duct. Dr. Cothran examined the lump and, as the circuit court recognized, instructed Jauregui that if she noticed any changes, she should call the office and set up another appointment. Trusting that advice, Jauregui monitored her lump and scheduled a follow-up appointment, when necessary, pursuant to Dr. Cothran's instructions. Jauregui's behavior between October 2018 and August 2019 can be directly attributed to Dr. Cothran's instructions. When Jauregui then returned in August 2019 after following that plan, the diagnostic testing and discovery of cancer was part of a "continuous and substantially uninterrupted course of examination" of Jauregui's breast lump, because the October 2018 and August 2019 visits centered on "the same or [a] related illness or injur[y]." *Id.* at 976, 979 (quoting *Borgia*, 187 N.E.2d at 779).

*Chalifoux* provides additional support for our conclusion that the August 2019 visit was part of a continuous and substantially uninterrupted course of examination. Chalifoux did not receive proper treatment for her symptoms, due in part to improper initial examinations resulting in incorrect diagnoses in December 2002, March 2003, August 2003, and February 2004. *Chalifoux*, 281 Va. at 693. A follow-up MRI in October 2005 then led to the discovery of her tumor and treatment. *Id.* at 693-94. In finding that this represented a "continuous and substantially

physician-patient relationship ended. Instead, the rule of that decision was that if there existed a physician-patient relationship where the patient was treated for the *same or related ailments* over a continuous and uninterrupted course, then the plaintiff could wait until the end of that treatment to complain of any negligence which occurred *during* that treatment.

235 Va. at 613 (first emphasis added).

uninterrupted course of examination and treatment," the Court found that because each follow-up "related to the same or similar symptoms," each prior misdiagnosis was "continuous and substantially uninterrupted" to the eventual correct diagnosis. *Id.* at 700-01. Approximately 20 months passed between the correct MRI diagnosis and the prior improper one in *Chalifoux*, nearly double the amount of time between Jauregui's improper diagnosis in 2018 and follow-up in 2019.

In this case, there was a direct causal link between the October 2018 visit, Jauregui's following Dr. Cothran's advice, and Dr. Cothran's treatment in August 2019. Each link in this chain is connected by Jauregui's consistent symptoms and efforts to diagnose and resolve those symptoms. Thus, they are "continuous and substantially uninterrupted." *Farley*, 219 Va. at 976.

## CONCLUSION

For the foregoing reasons, the circuit court erred in failing to apply the continuous treatment rule to Jauregui's statute of limitations and sustaining the plea in bar. We therefore reverse the judgment of the circuit court and remand the case for further proceedings consistent with this opinion.

*Reversed and remanded.*