PRESENT:  All the Justices

SHANNON J. COTHRAN, M.D.

                                             OPINION BY
v.  Record No. 250019                     JUSTICE CLEO E. POWELL
                                           DECEMBER 30, 2025

RENEE JAUREGUI

FROM THE COURT OF APPEALS OF VIRGINIA

Shannon J. Cothran, M.D. ("Dr. Cothran") appeals the decision of the Court of Appeals reversing the judgment of the Circuit Court of Fairfax County that a malpractice claim brought against her was barred by the statute of limitations.

## I.  BACKGROUND

On June 30, 2021, Renee Jauregui ("Jauregui") filed a complaint asserting a medical malpractice claim against Dr. Cothran.  In her complaint, Jauregui claimed that she had seen Dr. Cothran, an OB/GYN, for several pregnancy related visits between May and October 2018. Jauregui alleged that, during at least four of the appointments, she informed Dr. Cothran of a lump she had discovered in her breast.  According to Jauregui, Dr. Cothran told her that there was no reason for concern, the lump was a normal part of pregnancy, and diagnostic testing would not display useful information.  In August 2019, Jauregui returned to Dr. Cothran for a follow up on the breast lump and subsequent testing revealed that the lump was breast cancer.

Dr. Cothran filed a plea in bar asserting that the statute of limitations barred Jauregui's claim.  The parties agreed that the statute of limitations would bar any claims related to any appointments prior to the August 2019 appointment.  As a result, the dispositive legal issue became whether the continuing treatment rule applied to extend the statute of limitations to include Jauregui's previous appointments with Dr. Cothran.

At an evidentiary hearing on the matter, Dr. Cothran and Jauregui testified about their individual recollections of the 2018 appointments. Jauregui testified that she first informed Dr. Cothran of the lump during a May 2018 visit and that Dr. Cothran examined the lump and diagnosed it as a clogged milk duct. Jauregui further stated that Dr. Cothran gave the same diagnosis at the August and September 2018 pre-natal office visits. Jauregui also testified that at her postpartum appointment in October 2018, she again brought up the breast lump, and Dr. Cothran assured her that the lump would go away on its own with continued pumping. According to Jauregui, Dr. Cothran instructed her to monitor the breast lump and call the office if she noticed any changes. When Jauregui noticed a change in the lump in July 2019, she called and scheduled a follow-up appointment for August 2019. Subsequent diagnostic testing revealed that the lump was metastatic breast cancer.

Dr. Cothran testified that Jauregui never complained about the lump during any of the 2018 visits and that she never examined Jauregui's breast or told Jauregui to call the office if there were any changes. Dr. Cothran stated that she never expected to see Jauregui again after the October 2018 appointment. Dr. Cothran further claimed that she never diagnosed Jauregui with a clogged milk duct; rather, in 2019, Jauregui asked Dr. Cothran if the lump could have been a clogged milk duct.

After considering the evidence and the argument of the parties, the trial court sustained Dr. Cothran's plea in bar. It explained:

> In the case before me today there's no medical treatment at all.
> There was -- the plaintiff was taking care of her baby, but there
> was no treatment in the sense that I think the court meant in the
> line of cases talking about the course of treatment, the continuing
> treatment rule, and for that reason I don't think that the continuing
> treatment rule -- and it's noted. It's interesting that they refer to it
> -- the court itself continuously refers to it as the treatment rule, that
> there was any ongoing treatment here that would allow that

2

exception to apply. And, as I said, the standard is that there has to be a continuous and substantially uninterrupted course of examination and treatment. But here there was certainly not a continuous and substantially uninterrupted course of treatment because there was no treatment at all that was being administered by a doctor in this case, and I think there was also no continuous and substantially uninterrupted course of examination.

The witness herself testified, the plaintiff herself testified, that on October 24th, 2018, the way it was left was if she saw any changes, call the office and set up another appointment. That is not a continuous and uninterrupted course of examination. That is, in my view, clearly a substantially interrupted course of examination. And for all the doctor knew, the patient may never, ever have come back. So I don't -- and nobody was forecasting that at that point that there was going to be any need for any treatment or any examination let alone active treatment by a doctor in the sense that the Supreme Court cases discuss.

So, for that reason, I find that there was no continuous and substantially uninterrupted course of examination and treatment after October 24th, 2018. As a result of that, this case was filed after the statute of limitations expired and, therefore, the plea in bar is sustained.

In an unpublished opinion, the Court of Appeals reversed the trial court's ruling sustaining the plea in bar. *Jauregui v. Cothran*, Record No. 1133-23-4, 2024 Va. App. LEXIS 652 (Nov. 12, 2024). The Court of Appeals explained that the trial court misinterpreted the continuing treatment rule to require the existence of a specific treatment. According to the Court of Appeals, "[t]he presence of specific treatment is not determinative." *Id.* at *11.

The Court of Appeals went on to note that the trial court "appeared to find that Dr. Cothran examined the lump, and appeared to credit Jauregui's testimony that Dr. Cothran advised her that 'if she saw any changes,' she should 'call the office and set up another appointment.'" *Id.* Relying on this Court's decision in *Farley v. Goode*, 219 Va. 969 (1979), the Court of Appeals determined that the trial court had incorrectly found that "the course of examination was 'substantially uninterrupted'" because it focused on Dr. Cothran's expectations

3

with regard to the physician/patient relationship rather than whether Jauregui returned "pursuant to Dr. Cothran's instructions, for further examination of the same condition." *Id.* at \*12. The Court of Appeals explained that "there was a direct causal link between the October 2018 visit, Jauregui's following Dr. Cothran's advice, and Dr. Cothran's treatment in August 2019." *Id.* at \*14. As "[e]ach link in this chain is connected by Jauregui's consistent symptoms and efforts to diagnose and resolve those symptoms," the Court of Appeals held that there was a continuous and substantially uninterrupted course of examination. *Id.*

Dr. Cothran appeals.

## II. ANALYSIS

In her appeal to this Court, Dr. Cothran argues that the Court of Appeals erred in its application of the continuing treatment rule to the facts of this case. Dr. Cothran insists that the application of the continuing treatment rule requires a showing of a continuing course of examination and treatment. She notes that the trial court specifically found that there was not a continuing course of either examination or treatment due to the ten-month interruption between appointments. Jauregui counters by pointing out that the ten-month gap between appointments was due to Dr. Cothran's instructions that she monitor the breast lump and return for additional treatment. According to Jauregui, this establishes that the two periods when she was under Dr. Cothran's care were part of a single continuing course of care.

Code § 8.01-243(A) requires that a medical malpractice action be brought "within two years after the cause of action accrues." A right of action accrues "and the prescribed limitation period shall begin to run from the date the injury is sustained in the case of injury to the person." Code § 8.01-230. "Thus, it is well established in Virginia that the statute of limitations begins to

4

run when the plaintiff is injured, not when the plaintiff discovers the injury." *Chalifoux v. Radiology Assocs. of Richmond, Inc.*, 281 Va. 690, 696 (2011).

The continuing treatment rule operates as an exception to the two-year statute of limitations for medical malpractice actions. Under the continuing treatment rule,

> when malpractice is claimed to have occurred during a continuous and substantially uninterrupted course of examination and treatment in which a particular illness or condition should have been diagnosed in the exercise of reasonable care, the date of injury occurs, the cause of action for that malpractice accrues, and the statute of limitations commences to run when the improper course of examination, and treatment if any, for the particular malady terminates.

*Farley*, 219 Va. at 976.

Although referred to as the "continuing treatment rule," we must acknowledge that this is a bit of a misnomer. As previously noted, it is not actually a rule, it is an exception to the statute of limitations. Further, *Farley* clearly demonstrates that the existence of some form of treatment is not required for the proper application of the continuing treatment rule. Rather, the rule requires proof of "a continuous course of improper examination *or* treatment which is substantially uninterrupted." *Id.* at 980 (emphasis added). The use of the disjunctive "or" clearly indicates that the proper application of the continuing treatment rule only requires a continuous and uninterrupted course of *either* examination or treatment. Any doubt that that the Court did not intend to require treatment as a prerequisite for the application of the continuing treatment rule may be put to rest by looking at the facts of *Farley*. Notably, the malpractice at issue in that case involved a dentist's lack of treatment over a four-year period due to the failure to diagnose the patient's periodontal disease. *Id.* at 971-72.

Taken as a whole, the proper application of the continuing treatment rule focuses on the existence of a continuous and uninterrupted relationship between a physician and a patient *with*

*regard to a specific injury, condition, or malady*. Once such a relationship is established, the rule delays the accrual of a malpractice action related to the examination and treatment of that specific injury, condition, or malady until the relationship ceases. *Farley*, 219 Va. at 977. Moreover, as the facts of *Farley* demonstrate, the "examination" aspect of the rule necessarily includes a mistaken diagnosis or a failure to diagnose, just as the "treatment" aspect necessarily includes improper treatment or a failure to treat. *See id.* (recognizing that the gravamen of the underlying malpractice action related to a course of examination and failure to treat that "was shown to have been based upon a mistaken diagnosis").

In the present case, the trial court clearly based part of its decision to grant the plea in bar on its determination that "there was certainly not a continuous and substantially uninterrupted course of treatment because there was no treatment at all that was being administered by a doctor in this case." The absence of treatment, while certainly a factor to consider, is not, in and of itself, dispositive of the application of the continuing treatment rule. Therefore, if the absence of treatment were the sole basis for the trial court's decision, it would certainly be error.

The trial court, however, did not limit its ruling to just the lack of treatment. It also concluded that "there was also no continuous and substantially uninterrupted course of examination." Thus, we must also examine this alternative basis for the trial court's ruling.

As an initial matter, we note that the trial court's ruling on the course of examination was premised on Jauregui's testimony that Dr. Cothran had been informed of the lump in her breast, told Jauregui to monitor the lump for any changes, and instructed Jauregui that "if she saw any changes, call the office and set up another appointment." If the trial court had not accepted Jauregui's testimony, there would have been no need for the trial court to make a ruling about the substantial interruption, because the absence of a physician/patient relationship with regard to the

6

lump on Jaurequi's breast would preclude the application of the continuing treatment rule. *See Grubbs v. Rawls*, 235 Va. 607, 612 (1988) (describing the requirement that the physician/patient relationship exist with regard to a specific malady as an "essential limitation on the rule of continuing treatment"). Therefore, even though the trial court did not make an express finding regarding Jauregui's testimony, we will accept it as true for the limited purpose of examining the trial court's ruling with regard to the course of examination.

Having established that a physician/patient relationship between Dr. Cothran and Jauregui with regard to the breast lump existed, the question is whether that relationship continued, uninterrupted, beyond the October 2018 appointment. Proper application of the continuing treatment rule "presupposes" the existence of "a continuous course of improper examination or treatment which is substantially uninterrupted;" it does not apply to a singular or isolated act of malpractice. *Farley*, 219 Va. at 980. Importantly, whether the course of improper examination or treatment is continuous and substantially uninterrupted is a question of fact. *Id.* (requiring that the continuous, substantially uninterrupted course of examination or treatment be "proved as a matter of fact.").

Where a circuit court hears evidence *ore tenus*, "its factual findings are 'entitled to the same weight as a jury verdict, and [we are] bound by the [circuit court's] findings of fact unless they are plainly wrong or without evidence to support them.'" *Mulford v. Walnut Hill Farm Grp., LLC*, 282 Va. 98, 106 (2011) (quoting *Westgate at Williamsburg Condo. Ass'n v. Philip Richardson Co.*, 270 Va. 566, 573 (2005)) (first alteration in original); *see also* Code § 8.01-680. Here, the trial court, having heard the evidence *ore tenus*, made the explicit factual finding that, with regard to the lump in Jauregui's breast, the physician/patient relationship between Dr. Cothran and Jauregui was "not a continuous and uninterrupted course of examination;" rather, it

7

was "clearly a substantially interrupted course of examination." In explaining the rationale underlying its decision that there was a substantial interruption, the trial court noted that at the end of the October 2018 appointment, neither party could have forecasted "that there was going to be any need for any treatment or any examination let alone active treatment by a doctor."

The Court of Appeals, however, concluded that the trial court erred because it misinterpreted the phrase "substantially interrupted" in the context of a course of examination or treatment. *Jauregui*, 2024 Va. App. LEXIS 652, at *12. According to the Court of Appeals:

> Under *Farley*, the relevant question in determining whether the course of examination was "substantially uninterrupted" is not merely whether there was an ongoing physician-patient relationship, but whether that relationship concerns the "same or related illnesses or injuries." *Farley*, 219 Va. at 979 (quoting *Borgia v. City of New York*, 187 N.E.2d 777, 779 (N.Y. 1962)). So, in this case, Dr. Cothran's expectations about whether Jauregui would return are not dispositive; rather, what matters is that Jauregui later did return, pursuant to Dr. Cothran's instructions, for further examination of the same condition.

*Id.* at *12-13 (footnote omitted).

A review of *Farley*, however, demonstrates that the Court never actually defined the phrase "substantially uninterrupted." The definition that the Court of Appeals applied to "substantially uninterrupted" was actually for the phrase "continuous treatment."

> We observe, as pointed out by the *Borgia* court, that by "continuous treatment" we do not mean mere continuity of a general physician-patient relationship; we mean diagnosis and treatment "for the same or related illnesses or injuries, continuing after the alleged acts of malpractice."

*Farley*, 219 Va. at 979 (quoting *Borgia*, 187 N.E.2d at 778-79).

As we have explained, the proper application of the continuing treatment rule "presupposes that a *continuous* course of improper examination or treatment which is *substantially uninterrupted* is proved as a matter of fact." *Id.* at 980 (emphases added). Given

8

that "continuous treatment" refers to the physician/patient relationship with regard to the "same or related illnesses or injuries," *id.* at 979, the phrase "substantially uninterrupted" must mean something different to avoid redundancy. Accordingly, we hold that the Court of Appeals erred when it used the definition "continuous treatment" interchangeably with "substantially uninterrupted."

As the phrase "substantially uninterrupted" is not specifically defined, we look to the plain meaning of the phrase. We note that the word "uninterrupted" is synonymous with "continuous." Webster's Third New International Dictionary 2499 (2002) (defining "uninterrupted" as meaning "not interrupted : continuous"). Further, "substantial" is defined as "[c]onsiderable in extent, amount, or value." Black's Law Dictionary 1734 (12th ed. 2024). Taken together, the phrase refers to a physician/patient relationship that is mostly, but not necessarily entirely, continuous. Stated another way, the phrase "substantially uninterrupted" simply adds a layer of reasonableness into the continuity requirement.[1]

Viewed in this context, we are persuaded by the trial court's rationale that a substantial interruption occurred. As the trial court explained, at least one of the parties had reasonably concluded that the course of examination or treatment had reached its logical conclusion and "nobody was forecasting that at that point that there was going to be any need for any treatment or any examination." It is undisputed that, after the October 2018 appointment, there was an

---

[1] It is important to note that the continuing treatment rule is not meant to extend the statute of limitations for a lengthy or indefinite period of time in every instance where a physician is unable to determine what, if anything, is wrong with a patient. At the same time, our decision should not be interpreted so broadly as to exclude the application of the rule from every instance in which a physician takes a "wait and see" approach to a diagnosis or treatment. As the present case demonstrates, the proper application of the continuing treatment rule turns on the specific facts and circumstances of each case.

interruption in the course of examination and treatment. During that time, both parties proceeded as though the physician/patient relationship had ended. Although there was a possibility that Jauregui might return to see Dr. Cothran about the lump in her breast at some unknown point in the future, the fact remains that the physician/patient relationship was interrupted, and the longer that interruption continued, the more substantial it became. Approximately ten months[2] later, in August 2019, Jauregui returned. Under these circumstances, we cannot say that the trial court's finding that this amounted to a substantial interruption in the course of examination was plainly wrong or without evidence to support it. Thus, the trial court did not err in sustaining the plea in bar.

## III. CONCLUSION

For the foregoing reasons, we will reverse the decision of the Court of Appeals and reinstate the trial court's decision sustaining Dr. Cothran's plea in bar.

*Reversed and final judgment.*

---

[2] The length of time between appointments, while certainly a factor to be considered, is not necessarily dispositive. We note that, under different facts, a ten-month gap between appointments may not support a finding that a substantial interruption in the course of examination or treatment occurred. *See, e.g.*, *Farley*, 219 Va. at 972 (applying the continuing treatment rule where appointments were more than a year apart). It is also entirely possible that, under the proper factual circumstances, a shorter time period between appointments could be deemed a substantial interruption.